## Staunton.

TAYLOR v. THE COMMONWEALTH.

September 13th, 1883.

1. CRIMINAL PRACTICE—*Adjournment and examinations—Review.*—All questions concerning the adjournment of the court and the examination of witnesses lie peculiarly within the discretion of the trial-court, subject, however, to review as in other cases.

2. IDEM—*Adjournment to procure attendance of witness.*—Where accused made strong effort to prove *alibi*, and commonwealth had introduced all its evidence, and that for defence had been concluded, it was not improper for the court to adjourn from 3 o'clock P. M. until 10 o'clock A. M. next day, to allow commonwealth time to procure the attendance of witnesses to rebut the evidence of *alibi*.

3. IDEM—*Evidence—Letter describing stolen property.*—A. purchased the stolen horse from accused, and sold it to F., who received a letter, so accurately describing the horse, that F. surrendered it to the owner. It was not improper to allow F. to testify to this fact, especially after the same had been previously established by other witnesses without objection from accused.

4. IDEM—*Idem—Ownership of stolen property.*—It is not improper to permit the ownership of the stolen horse to be established by the son of the owner, the latter being absent from the state.

5. IDEM—*Evidence certified—New trial.*—Where the *evidence*, and not the *facts proved*, is certified, the verdict will not be disturbed unless it appears wrong, after rejecting all the parol evidence of the exceptor, and giving full faith and credit to the commonwealth's evidence.

Error to judgment of circuit court of Rockbridge county, rendered 10th March, 1883, affirming the judgment of county court of said county, rendered 18th November, 1882, sentencing David H. Taylor *alias* Thomas Whorley to confinement in the

state penitentiary for the term of four-and-a-half years, the said Taylor having been found guilty on an indictment for stealing a horse.

The facts and the points raised are fully stated in the opinion of the court.

*John H. McCue*, for the prisoner.

*Attorney-General Blair*, for the commonwealth.

HINTON, J., delivered the opinion of the court:

Upon the trial in the circuit court, the accused relied upon the same assignments of error upon which he relies in this court. Of these, the second, third and fourth are the most important. Taken together and disconnectedly from the special facts of the case, they present, for the consideration of this court, the question whether a court can, in any case, after all the evidence for the commonwealth has been introduced and the testimony for the defence has been concluded, adjourn a case over from one day to the next for the purpose of enabling the commonwealth to procure evidence in rebuttal.

This is the first time, so far as we are aware, that this question has ever been before this court for its adjudication, and we have given to it the careful consideration which its gravity and importance demands. We fully realize the dangers attending a decision either way. On the one hand, if we hold that no such discretion is vested in the trial court, substantial justice will often be defeated, and the guilty be set free to enter upon a new career of crime; on the other hand, if we hold that the power to interfere with the usual course of trial for the purpose of procuring such testimony does exist in the trial court, it is liable to abuse and is fraught with danger to the proper administration of justice from the unwise and injudicious exercise thereof.

In *Livingston's Case*, 7th Gratt. 661, Field, J., in delivering the opinion of the court, whilst not speaking directly as to the power of a court *to adjourn* in order to allow the attendance of witnesses to be secured, but to the point whether or not new testimony or new witnesses may be examined after a case has been given to the jury, said "whilst we have no hesitation in saying that, as a general rule, after a cause has been submitted to a jury, it is improper to introduce new testimony or examine new witnesses, there can be no doubt of the propriety for good cause shown of admitting new testimony or the examination of new witnesses. But in allowing this to be done, the court must exercise a sound discretion. When the circumstances of the case make it necessary and proper to do so, the court ought to permit either party to introduce new witnesses and new testimony."

In *Howel's Case*, Lomax, J., said: "The reëxamination by a party of his own witnesses, after a cross-examination by the adversary, in order to obtain evidence as to new matter, seems not to be allowable in the practice of the English courts. Roscoe's Cr. Ev. 151. Nevertheless, it is stated, even there, if any material question has been omitted in the examination in chief, the practice is to suggest it to the court, who will put it to the witness, or decline to do so, at its discretion. 2 Russ. Cr. 621; also 2 Gabb. Cr. L. 508. It would seem," says that distinguished judge, "a most unreasonable rigor in the rule alluded to, if it shall be enforced so as to defeat justice, because of the accidental omission of counsel at the regular stage to examine the witness as to this other matter, or if it were so inflexible as to preclude the examination of the same witness as to matter newly discovered, and which, therefore, could not have been searched out by enquiries when the witness was first upon the stand. This court considers it as a matter resting in the sound discretion of the court to allow a relaxation of the rule whenever the purposes of justice are thereby to be promoted."

In *The People* v. *Mather*, 4 Wend. 249, the court held that it was a matter resting in the discretion of the court before whom a trial is had whether or not to permit the reëxamination of a witness after the lapse of a day, and after the examination of other witnesses, and that the supreme court would not interfere with the exercise of such discretion except in a very flagrant case.

In *Ligget* v. *Boyd*, 3 Wend. 376, it was held that, "after the trial of a cause has commenced it is entirely in the discretion of the court to delay until a party can procure the attendance of a witness who is absent at the moment he is called."

In Harris' Cr. Law, 392, it is laid down in so many words that a judge may, after the witnesses for the prosecution have been all examined, adjourn a case and proceed with another, if the emergency requires it, as for example to give time for the production of something essential to the proof or for the witnesses to arrive. Wharton's Cr. Pl. and Pr., section 718.

Now, whilst none of these citations involve the precise question before us, they do clearly show that all matters in regard to the adjournments of the courts and the examination of the witnesses are peculiarly within the province of the trial court, subject, however, to review as in other cases. And this being so, we think the court did not err when it adjourned this case over from 3 o'clock P. M. on the 9th day of November, 1882, until the next morning at 10 o'clock A. M., for the purpose of procuring the attendance of the three witnesses, Samuel McGuffin, D. S. Black and Robert Painter. As the record shows, the accused had made a strong effort to establish an *alibi*, and in this condition of the case it was eminently proper for the commonwealth to introduce these witnesses to prove that the accused was, during the whole of the third and fourth days of August, 1882, the days on which the horse was stolen and sold, at places widely separated from those at which he claimed to be during these days, and so rebut the evidence produced to prove the *alibi*.

The next assignment of error which we shall notice is, that one J. F. Tompkins, who purchased the horse from one Anderson, to whom the prisoner had sold him, was permitted to state that he had received a letter from E. B. Bosworth, the owner, describing the stolen horse so accurately that he had surrendered it up as the property of said Bosworth. In the admission of this testimony we perceive no error, at least, to the *prejudice* of the prisoner. In the circumstances of this case, it could, at most, only amount to a statement of the fact that the witness had been satisfied that the horse was stolen, and had delivered it up to the rightful owner; and all this, as it appears from the record, had been previously established by the testimony of two other witnesses without objection on the part of the prisoner. It is impossible, therefore, that it could have affected the case of the accused injuriously.

The fifth assignment of error is, that J. E. Bosworth, and *not E. B. Bosworth,* was introduced and allowed to prove that the horse alleged to have been stolen was the property of E. B. Bosworth. This was entirely proper. J. E. Bosworth, as the record shows, was the son of E. B. Bosworth; he was thoroughly acquainted with the horse which had been in his father's possession for eight or nine years, and had himself put it in the pasture from which it was taken. Under these circumstances it was entirely competent for the commonwealth to establish the ownership of the animal by the son in the absence of the father, who was without the state and beyond the process of the court.

The sixth and last assignment of error is, that the court refused to set aside the verdict and grant the prisoner a new trial. Upon this point it is sufficient to say that we are not dissatisfied with the verdict as it is; but were it otherwise, the *evidence,* and not the *facts proved,* having been certified, this court, under its well established rule, could not reverse the judgment unless, after rejecting all the parol evidence of the exceptor, and giving full faith and credit to the evidence of the

commonwealth, the decision of the lower court still appeared to be wrong. *Read's Case*, 22 Gratt. 924; *Baccigalupo's Case*, 33 Gratt. 811; *Dean's Case*, 32 Gratt. 912. There is no error in the judgment of the county court or in the judgment of the circuit court of the county of Rockbridge, and the judgment of the said circuit court is therefore affirmed.

JUDGMENT AFFIRMED.