# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

Moses v. Old Dominion Iron and Nail Works Co.

February 25th, 1885.

Practice at Common Law—*New trial.*—Where, under the rule of this court to reject all the parol evidence of the exceptor to the refusal of the court below to award a new trial, and to give full weight and credit to the exceptee's evidence, this court is left without means to determine whether the court below erred or not, the judgment of the lower court must be affirmed.

Error to judgment of circuit court of city of Richmond, rendered 5th July, 1883, in an action for damages wherein Alfred Moses was plaintiff and the Old Dominion Iron and Nail Works Company was defendant. Plaintiff owned a large warehouse in said city, built in 1866, for the purposes of a wholesale commission business, and constantly used as such up to the leasing thereof by the defendant company, January 1, 1876, by which it was used for storing nails and bar-iron, after having in its own way, according to its own plans and by means of its own servants, attempted to make the building suitable for its purposes. On March 28, 1876, the company began to store quantities of iron in the building, placing the bulk thereof on the western side, and that night said western side fell, the floors on that side giving away. The repairs cost plaintiff $2,118.94, and he sued to recover damages. The jury found for the plaintiff and assessed his damages at $674.28 without interest. This verdict the plaintiff moved to

set aside, because contrary to the evidence and because of the inadequacy of the damages.  The court overruled the motion. Plaintiff excepted, and the evidence being certified, the plaintiff obtained a writ of error to this court.

This case is sequel to the case under the same style reported in 75 Va. 95, and is the same case reported in 81 Va. 22, and is republished in order that Judge Lacy's dissenting opinion may appear.

*A. M. Keiley* and *Pegram & Stringfellow*, for the plaintiff in error.

*H. Marshall*, for the defendant in error.

HINTON, J., delivered the opinion of the court.

This is a complaint of a judgment of the circuit court of the city of Richmond refusing a new trial on the ground that the verdict was contrary to the evidence, and because of the inadequacy of the damages.

The case was submitted to the jury under proper instructions, which directly presented to them the question whether the destruction of the building was caused by the alleged tempest, the improper construction of the building originally, or by the overloading of the defendant company; and they found a verdict for the plaintiff for "$674.28 without interest."  It is insisted for the plaintiff in error that the finding "for the plaintiff" decided the only disputed question in the case—that is, who was the party liable for the loss.  That being determined, the *quantum* of damages was fixed by the evidence beyond dispute at a much larger sum.

Doubtless it is true, where the case comes up properly, that a new trial will be granted where the damages are grossly

inadequate, or where the law itself prescribes the measure of damages if the plaintiff should recover, or where the action is on a contract for a fixed sum, and by some mistake or misapprehension, or through passion or prejudice, the jury have awarded a lesser amount. But, unfortunately for the plaintiff in error, his case comes up upon a certificate of evidence, instead of a certificate of facts; and, under the well settled rule of this court, it can take no cognizance of the case unless, after rejecting all the oral evidence of the excepting party and giving full force and credit to the evidence of the adverse party, the judgment still appears to be wrong. *Bennett* v. *Hardaway,* 6 Munf. 125; *Danville Bank* v. *Waddill,* 31 Gratt. 475; *Dean's Case,* 32 Gratt. 916; *Baccigalupo's Case,* 33 Gratt. 807; *Creekmur* v. *Creekmur,* 75 Va. 430; *Taylor's Case,* 77 Va. 697; *Muse* v. *Stern,* 82 Va., *post.*

Applying this rule, and discarding all the oral evidence of the plaintiff in error, it not only does not appear that he has been damaged, but, on the contrary, it does affirmatively appear from the evidence of the defendant in error that the destruction of the building was occasioned either by the tempest or its original faulty construction; and that, therefore, he, if any one, and not the plaintiff in error, has been prejudiced by the verdict. However this may be, it is perfectly clear that, under the rule of this court, we are left without the means of determining whether the circuit court erred or not. As, therefore, the defendant in error does not complain, the verdict must be affirmed.

LACY, J., dissenting, said:

This is a writ of error to a judgment of the circuit court of Richmond city, rendered on the 5th of July, 1885.

The case is as follows: The plaintiff in error is the owner of

a warehouse in the city of Richmond, built in the year 1866, for the purposes of a wholesale commission business. In 1876 the defendant in error took possession under a lease from the owner. By an agreement between the lessor and the lessee the lessee made such additions to the strength of the building as it desired to make, and the lessor allowed a credit of $500, out of the rent, to pay for the same. When these were completed, the lessee stored large quantities of iron in the said warehouse, placing the bulk of the iron on one side, on a rack erected on an upper floor. On the 28th of March, 1876, the warehouse was broken through, under this iron, the floors going down and crushing into the earth the posts placed under the floor by the lessee; but the eastern side was not broken nor disturbed, and the pillars in the western side were not moved nor damaged, remaining steadfast to their foundations, as was disclosed upon examination. The lessor claimed that the damage to the house was from overloading, demanded payment of the lessee, and offered to submit the matter to arbitration, which was refused; whereupon, giving notice in writing that he would sue for damages, he at once proceeded to repair. The cost of these, as originally contracted for by the lessor, was $2,118.94. But extra work was required by the lessee, which increased the cost of repairs to the sum of $2,655.71, and he lost two months' rent, which he claimed at $300.

There was no contest as to the cost of the repairs; it was not claimed that the cost was excessive or in any respect improper. The lessee paid $1,606.68 for the loss and damage to his goods, but this was no part of the $2,655.71. At the trial the contest was as to the liability for the breakdown in the house. The plaintiff claimed that it was from overloading on the part of the defendant. The defendant set up as the cause a storm which occurred that night and the faulty construction of the building.

The court instructed the jury as follows: " You are to say whether, under all the evidence in the case, the destruction of the building was caused by the alleged tempest, or by the improper construction of the building originally, *or by the overloading of it by the defendant company.* IN THE LAST CASE only will you find for the plaintiff." To this instruction no exception was taken. No instruction was asked as to the *quantum* of the damages, there being no dispute and no conflict as to the costs of the repairs. The question in dispute was, who was reponsible for the destruction of the building? The jury found for the plaintiff, and assessed his damages at $674.28. The plaintiff moved the court to set aside the verdict because of the small amount of the damages assessed by the jury. This motion the court overruled, and rendered judgment on the verdict as found by the jury. From this judgment the plaintiff applied for and obtained a writ of error to this court.

It being proved, and not contradicted on the trial, that the wind in the early part of the night of the 28th of March, 1876, ceased entirely at or about eight o'clock, that the breakdown in the building did not take place until after twelve o'clock that night, and that the foundations of the building remained undisturbed by the breaking through of the floors, of the iron rack loaded with 200 tons of iron, besides 63 tons on the floor. On the sample floor, 4,300 kegs of nails weighing 105 pounds to the keg ; on the second floor, 2,000 kegs of nails weighing 105 pounds to the keg; on the third floor, 1,000 kegs of like weight, there being nothing on the fourth floor.

The defendant did not except to the finding against him, nor did he appeal, but acquiesced in the finding against him. The question raised in this court is only as to the question of the measure of damages. If there is any error in the record as against the defendant in error it is waived, no appeal having

been taken by the said defendant in error.  If, however, under Rule IX of this court, error is perceived by the court against the defendant, it will consider and review and reverse for such error unless it is waived (as in this case such error, if any, is expressly waived).  Rule IX provides: " In any appeal, writ of error or *supersedeas*, if error is perceived against any appellee or defendant, the court will consider the whole record before them, and will reverse the proceedings, either in whole or in part, in the same manner as they would do were the appellee or defendant to bring the same before them, either by appeal, writ of error or *supersedeas*, unless such error be waived by the appellee or defendant, which waiver shall be considered a release of all error as to him."  And I will observe that if the said defendant in error had excepted to the finding of the jury against it and appeared by writ of error here, or if it had *not* waived the error, if any, and had come under Rule IX, *supra*, its complaint would have been considered by this court under the light of that cardinal rule long maintained here, " that this court will not undertake to decide at all on the credit of witnesses."  *Ewing* v. *Ewing*, 2 Leigh, 370, 372 and 375, and cases cited, and *Carrington* v. *Bennett*, 1 Leigh, 382, 385, and cases cited.  For whatever conflict there was as to the responsibility for the breakdown, the jury, the proper tribunal, acting within the scope of their peculiar province, had passed upon the relative weight of the evidence, and this court cannot decide as to its credibility without usurping the province of the jury.  There is no conflict whatever as to the cost of the repairs.  The cost is clearly proved and admitted to be $2,655.71, and the plaintiff claimed $300 for rent; yet the jury assess the damages at $674.28.  Our statute provides that a new trial may be granted as well when the damages are too small as when they are excessive.  Chapter 173, section 15, Code, 1873.

In considering the question as to the measure of damages, there is no burden on the plaintiff in error which requires that he shall waive any of his testimony. The question being without conflict, the rule referred to by Judge Hinton, and *cited* in his opinion, has no application; that this is so I will show by briefly citing authority. Mr. Minor, on page 746 of his fourth volume, says : " If, indeed, there is no conflict of evidence, a statement of the evidence is a statement of the facts, and will be so regarded." This, I think, is correct, and is sustained by the decisions of this court. In *Green* v. *Ashby*, 6. Leigh, 142, Judge Brockenbrough said : " Evidence admitted to be true seems to me to be in nowise different from *facts proved;*" and again, " the case now before us is very much like that of *Ewing* v. *Ewing*, as to the character of the bill of exceptions. It does not state the facts which were proved, but gives us the evidence on which the plaintiff relied to maintain his action. That evidence is not contradictory in itself; and the defendant gave no evidence. We must then take the evidence of the plaintiff to be true, and we must consider all facts fairly deducible from that evidence, as *facts proved.* We have the same lights to lead us to a just conclusion that the circuit court had, FOR WE ARE NOT CALLED ON TO WEIGH EVIDENCE, NOR TO JUDGE OF THE CREDIT OF WITNESSES." And I think this is *the reason of the rule,* as to bills of exceptions, and without the reason the rule is *without existence.*

Judge Carr said: " This case comes before us, upon a refusal of the court below to grant a new trial, and an exception taken to that refusal spreading *all the evidence*, not the facts proved, on the record. In *Carrington* v. *Bennett*, this court decided, that the only effect *Bennett* v. *Hardaway*, 6 Mun. 125, was that a party shall not be permitted so to frame his bill of exceptions as to refer the credit of the witnesses to the appellate court; and that where there was no conflict, and, of

consequence, no question could arise as to the credit of witnesses, the appellate court would consider an exception *well taken* which spread the *whole evidence,* instead of the facts proved, upon the record. In *Ewing* v. *Ewing,* this opinion was again considered as correct and acted upon. According to these decisions we must receive the exceptions here as well taken, for the evidence is all on one side, and *there cannot be a question of the credit of the witnesses."*

Cabell, judge, said : " I am clearly of opinion upon the authority of the cases of *Carrington* v. *Bennett* and *Ewing* v. *Ewing,* that the exception to the opinion of the court, overruling the motion for a new trial, was properly taken, there being no conflict in the testimony, which was all on one side, and against the party tendering the exception: and that, in such a case, it is competent to this court, and it is its duty, to deduce from the testimony all such inferences of fact as the jury might have deduced from it." Brooke, judge, seemed to take a different view of *Bennett* v. *Hardaway,* but admitted that in that case the evidence was contradictory, and he concedes all that is necessary for my view when he cites the court approvingly as saying, " It is an important principle, that the revising court should have the same lights, and act upon the same data, as the inferior court. This is always so, where the case depends upon a question of law; for that question being permanently spread upon the record in the trying court, is carried up to all the revising tribunals."

Judge Tucker said : "From this view of the matter, we may deduce the rule, that no bill of exceptions is properly taken, *which submits to this court conflicting evidence, upon the credit of which we must decide, before we can pronounce upon the judgment of the inferior court."* He says further, that if all the evidence is on one side, and that is introduced by the excepting party, the bill of exceptions is not properly

framed if it recites the evidence given, instead of the facts; for, peradventure, the court and jury may have disbelieved the witnesses, and *if so*, this court could not interfere. How the court and jury would disbelieve uncontradicted and unde-nied evidence is not explained, and I suppose no such case has arisen or will arise. The cases where the evidence is all on one side, and is uncontradicted, and is on the side of the except-ion, will not be a case probably where the court and jury have agreed, but where the court has disagreed with the jury. At all events, *Bennett* v. *Hardaway* is authority for no such propo-sition. In this case neither the court nor the jury can be held to have disbelieved the evidence as to the cost of repairs, but the jury arbitrarily fixed the damages, as is claimed, by a com-promise verdict among themselves, and the court overruled the motion for a new trial. But the record shows that the plaintiff in error has been once before in this court in this case on appeal, when this court corrected the erroneous ruling of the court below against the said plaintiff in error.

In the case of *Keys* v. *M'Fatridge*, decided by this court in 1817, 6 Munf. 18, this court reversed the judgment of the court below on a bill of exceptions setting forth all the facts proved to the jury. In that case the bill of exceptions purports to be a certificate of what was proved by the plaintiff, yet an inspec-tion of the evidence proves, I think, that it included the evi-dence of the defendant, to wit: "that the defendant made preparations to perform for the plaintiff said tour of duty as his substitute at *considerable* expense," &c. The plaintiff evidently did not offer nor prove that circumstance of defence; at all events it was the evidence upon which his recovery was reversed. The case of *Bennett* v. *Hardaway*, following this case, was decided in 1818, 6 Mun. 125. Judge Coalter said, speaking of the mode in *Keys* v. *M'Fatridge*, certifying the facts proved, or the mode in that case (*Bennett* v. *Hardaway*), "but I think either

way, according to circumstances, be proper, and that it might be unsafe to confine it to the one or the other mode, and, *more especially*, that it would be unsafe to confine it to the mode adopted in the former case" (*Keys* v. *M'Fatridge*).

Judge Roane says: "The evidence, as it appears upon the record, is conflicting and contradictory;" and the reasoning throughout his opinion, which is the opinion of the court, is based upon this circumstance, that the evidence was conflicting and contradictory. In speaking of the evidence in the court below, he says: "This court only sees the evidence on the record; and, on paper, the credit of every witness is the same, who is not positively impeached. This would be for this court to revise and reverse the opinion of the court below on a question touching the weight of evidence and the credit of witnesses. It is an important principle that the revising court should have the same lights and act upon the same data as the inferior court." His whole argument is based upon the question as to the review of the evidence upon its weight or its credibility. This argument and this decision, I think, has no application to a case where all the evidence is certified, where there is no conflict, or to a case where all the evidence is on one side and uncontradicted. The cases of *Carrington* v. *Bennett, Ewing* v. *Ewing* and *Green* v. *Ashby, supra,* are cited and approved by this court in the case of *Rohr* v. *Davis,* 9 Leigh, 33.

Mr. Barton, in his law practice, page 220, says: "All that the rule requires is that the appellate tribunal be absolved from the decision of the question whether the testimony is true or untrue—citing Judge Tucker in *Bennett* v. *Hardaway*—if the court below certifies facts proved and all the facts proved." Yet, if the bill of exceptions discloses a conflict of evidence, the court of appeals will treat the case as one where the evidence is certified. See the opinion of Judge Moncure in *Read's*

*Case,* 22 Gratt. 924, citing, as to the rule where the evidence is certified, *Ewing* v. *Ewing, supra,* and as to the assertion that each case must depend upon its own circumstances, &c., *Bennett* v. *Hardaway, supra,* and other cases.

In the case of *Gimmi* v. *Cullen,* 20 Gratt. 439, the cases are examined and compared, and it was held that "if all the evidence is the evidence introduced by the exceptor, the appellate court will not review the judgment; but if all the evidence is introduced by the party who recovers a judgment, the appellate court will review." But in a case where the evidence was all introduced by the party who obtained the verdict, and yet he was made the exceptor, by the action of the court in setting aside the verdict, if the exceptor's evidence is rejected, who passes upon the weight or credibility of the evidence? See the opinion in that case. This statement of the rule is not sustained by the authorities cited. In this case the sole question before this court was the measure of damages. As to this question there was no conflict of testimony. I do not see how the court can refuse to review the case upon the ground that the evidence was certified as to a question not in dispute. The question of the measure of damages in a case like this is a question of law. That the damages were too small was not subject of review before the statute to be found in the Code of 1819, chapter 128, section 96, page 510; *Jackson* v. *Boast,* 2 Va. Cases, 49, decided in 1819; *Rixey* v. *Ward,* 3 Rand. 52.

In an action like this without any circumstances of aggravation—the case not being one which called for vindictive or exemplary damages—the plaintiff, if entitled to recover at all, was entitled to recover compensation for the injury sustained. *Conrad* v. *Pacific Ins. Co.,* 6 Peters, 262, 282; *Bell* v. *Cunningham,* 3 Peters, 69; *Tracy* v. *Swartwout,* 10 Peters, 81, 95. In actions of trespass where the plaintiff complains of

no injury to his person or feelings, where no malice is shown, where no right is involved beyond a mere question of property, where there is a clear standard for the measure of damages and no difficulty in applying it, the question of damages is a question of law, and is necessarily under the control of the court. *Berry* v. *Vreeland*, 1 Zab. (N. J.) R. The proper measure of damages in actions of this kind is the real value of the property destroyed. *Perkins* v. *Towd*, 43 N. H. 220. The measure of damages in all cases where no complaint is made of evil motives is a plain question of law. The damages must be assessed on the principle of compensation to be regulated by the direction of the court, and the jury cannot substitute their vague and arbitrary discretion for the rules which the law lays down. In the case of *John Porteous* v. *Joseph Hazel and Joseph Jenkins*, Harper's Reports, page 332, the court held that the taking of the property by an illegally constituted patrol was a trespass, and the court granted a new trial because the damages were assessed at less than the proved value of property; saying the law entitled him to recover so much at least. He was as much entitled to a verdict for the value of the property as if he had brought *assumpsit* and proved a sale of the property. Whether they could have found greater damages was for them to determine. In the case of *McDonald* v. *Waller*, decided in the court of appeals of New York in 1869, 40 N. Y. 551, Judge Woodruff said: " A verdict for a grossly inadequate amount stands upon no higher ground in legal principle, nor in the rules of law and justice, than a verdict for an excessive or extravagant amount. It is doubtless true that instances of the former occur less frequently, because it is less frequently possible to make it clearly appear that the jury have grossly erred. But when the case does plainly show such a result, justice as plainly forbids that the plaintiff should be denied what is his due as that a plaintiff should pay what he ought not to be charged."

In the present case it is urged that a verdict for the defendants might have been rendered, and had the jury rendered such a verdict it could not have been disturbed. This is no doubt true; but the difficulty with the appellees' argument is that the jury have not found for the defendants, but have found against them. So long as the verdict stands it is taken to determine that the plaintiffs are entitled to recover. That being determined, the verdict is wholly inconsistent with itself and a violation of the plaintiff's right when it totally disregarded the evidence of the damages sustained. See also *Wise* v. *Freshley*, 3 McCord, 322, decided by the court of appeals of South Carolina, 1826. Judge Calcock said, in delivering the opinion of the court in that case: "In this case the new trial must be granted, for the jury have, by their verdict, established the right of the plaintiff to recover; and if he has a right to recover, he ought to have the value of the property lost." In this case, without estimating the rent claimed, the injury to the plaintiff is admitted to be $2,655.71, and $300 is claimed for the two months' rent, while the verdict was for $674.28. Upon what principle, if the plaintiff is entitled to recover, which must be held to be determined as long as this verdict stands, can the damages be placed at $674.28? It is justified by the defendant upon the ground that it was reached by compromise.

| | |
|---|---:|
| The damage of the plaintiff, | $2,955 71 |
| The damage of the defendant, | 1,606 68 |
| Total loss to both, | $4,562 39 |
| Divide by 2, | 2,281 19 |
| Deduct defendant's loss, | 1,606 68 |
| Damages, | $674 51 |

Dissenting Opinion.

But such a compromise as this was derived by deducting the defendant's loss twice, thus:

| | |
|---|---:|
| Total loss, - - - - - | $4,562 39 |
| Deduct defendant's loss, - - - | 1,606 68 |
| | $2,955 71 |
| Deduct defendant's loss second time, - | 1,606 68 |
| | $1,349 03 |
| Now divide this sum by 2 and we have, - | 674 51½ |

This sort of compromise verdict appears to be merely arbitrary. Why deduct the defendant's loss on his goods twice, and then divide by two? Such a proceeding is merely fanciful and arbitrary, and can be sustained upon no just principle. If the plaintiff is entitled to recover, as must be admitted, upon what principle should the plaintiff compensate the defendant for a loss occasioned by his own default, either once or twice?

I dissent from the opinion of the court for the foregoing reasons. I have not attempted to cite all the cases bearing upon the question upon which the opinion of Judge Hinton rests—the recent cases are familiar; but I am of the opinion that the rule he cites and relies on has no application to this case. In a case—*Gooodman* v. *R. & D. R. R. Co.*, 81 Va. 576—recently argued and submitted here and considered by the court—not yet decided—the inapplicability will be striking—a case where the exceptor offered all the evidence and obtained a verdict, which was set aside by the trial court.

Judgment affirmed.