(Decided 12th January, 1872.)

## The Adams' Express Company *vs.* William H. Trego.

*Appeal—Refusing a Continuance—Rules of Court— Removal of Causes from the State Courts into the Federal Courts—Amendment of the Declaration—Legal presumption as to a Corporation created by the laws of a State — Employer and Employé—Question for the Jury—Construction of the Powers of an Agent—Principal and Agent— Powers of an Agent, how to be exercised—When the rule, that notice to an Agent, is constructive notice to his Principal, does not apply—Ratification by the Principal of an unauthorized act of his Agent — When Ratification may be Disaffirmed—When Ratification will be presumed— Evidence—When an Employé may be lawfully Discharged from service.*

During the trial of a cause, leave having been granted by the Court to the plaintiff to amend his declaration, the defendant moved for a continu-

ance to enable it to plead to the new and amended declaration, claiming that under a rule of the Court, it was entitled to time until the second rule day thereafter. The Court refused the continuance and required the defendant to plead forthwith. HELD:

That from this action of the Court no appeal would lie—the granting or refusing a continuance having been confided by statute to the discretion of the Court; and of this discretion the Court could not be deprived by a mere rule.

Under the Act of Congress of March 2d, 1867, providing for the removal of causes in certain cases from State Courts to the Circuit Courts of the United States, the application for removal must be made before the hearing or trial commences. An application made during the progress of the trial, is too late, and will be disallowed.

A cause in a State Court can be removed to a Federal Court, under the Act of Congress of March 2, 1867, only when it affirmatively appears, either by the pleadings in the cause, or other appropriate allegation, that the party desiring the removal is a citizen of another State than that in which the suit is pending, and that the adverse party is a citizen of the particular State in whose Court the suit was brought.

A pending trial is not terminated by leave to amend the declaration, where the substance of the issue is not materially changed by the amendment, and a continuance is not deemed necessary to the ends of justice; the cause proceeds as if no amendment had been made.

Where a corporation is created by the laws of a State, the legal presumption is, that its members are citizens of the State in which alone the corporate body has a legal existence; and any suit by or against such corporation in its corporate name, must be presumed to be a suit by or against citizens of the State creating the body corporate; and no averment or evidence to the contrary is admissible for the purpose of withdrawing the suit from the jurisdiction of the Courts of the United States.

An employé is bound to serve his employer faithfully, and to refrain from doing any act knowingly and wilfully which may affect injuriously his employer's business; and if he violate his obligation in this respect, he may lawfully be discharged by his employer.

Whether the conduct of the employé be such as to furnish sufficient ground for his discharge, is a question of fact for the jury.

Authority to a general superintendent of an Express Company, to employ and discharge agents and direct their conduct, make contracts and exer-

cise a general supervision over the business of the Company, cannot reasonably be construed as empowering him to license one of his coëmployés—an assistant superintendent,—to engage in and carry on a business in competition with, and injurious to that of the Express Company.

Authority, whether special or general, conferred upon an agent, is to be construed as including only the usual means appropriate to the end. Even if a general discretion in an agent, it is not deemed to be unlimited; but must be exercised in a reasonable manner, and cannot be resorted to in order to justify acts, which the principal could not be presumed to intend; or which would defeat, and not promote, the apparent end or purpose for which the power was given.

The powers of an agent are to be exercised for the benefit of his principal only. A power to do all acts that the principal could do, or all acts of a certain description, for and in the name of the principal, is limited to the doing of them for the use and benefit of the principal only, as much as if it were so expressed.

The rule, that notice to an agent of facts arising from and growing out of the subject matter of his agency, is constructive notice to the principal, has no application to the case where the question is, whether the act relied on to bind the principal, was done within the limit and scope of the agent's authority or not.

While the act of an agent, though unauthorized at the time, may become binding upon the principal by ratification and adoption, to make such ratification effectual, it must be shown that there was previous knowledge on the part of the principal of all the material facts and circumstances attending the act to be ratified; and if the principal assent to the act while ignorant of the facts attending it, he may disaffirm it, when informed of such facts.

Where an act is done in behalf of the principal, though not within the authority of the agent, if the former have full knowledge upon the subject and derives benefit from the act, he must dissent, and give notice thereof within a reasonable time, or his assent and ratification will be presumed.

In an action brought against an Express Company for wrongfully discharging the plaintiff as an assistant superintendent of the Company, and to recover the balance of a year's salary claimed to be due to him, his declaration to the general Superintendent of the Company, after being notified of his dismissal, that he intended to hold the defendant responsible for his year's salary, is not admissible in evidence.

If a person employed by the year, as an assistant superintendent of an Express company, at a stated salary, payable monthly, engage in another

business in competition with, and calculated seriously to injure that of the Express company, and being notified by the company that he must discontinue said business, refuses so to do, and is discharged at the expiration of six months, and paid for his services at the stipulated price, up to the time of his discharge, he cannot recover the balance of the year's salary.

APPEAL from the Circuit Court for Baltimore County.

*First Exception*—At the trial of this cause, the plaintiff proved by his own testimony that he had been employed since 1852 until 30th June 1869, as assistant superintendent by the defendant, through Samuel M. Shoemaker, the superintendent or general agent of the defendant for the division or district, consisting of Maryland, District of Columbia and a part of Virginia; that he was employed by the year, from January to January, and in 1867 his salary was $4000, and so continued until the close of his service; that on the 28th of June, 1869 Mr. Shoemaker showed him a letter and informed him that his services would not be required after the 30th instant, but gave no reason therefor; an explanation was asked, but none was given.

The plaintiff then offered in evidence his declaration to said Shoemaker on the 30th of June 1869, after he had been notified of his dismissal from the service of the company, that he intended to hold the company responsible for his year's salary. To the admission of this declaration as evidence, the defendant objected, but the Court (YELLOTT, J.) overruled the objection and allowed the evidence to go to the jury; to this ruling of the Court, the defendant excepted.

*Second Exception*—The plaintiff having given in evidence the testimony set forth in the previous exception, testified on cross examination that at the time of his dismissal, and from November 1868, he had, with S. H. Geegan and P. S. McLaughlin been interested, as the Philadelphia, Wilmington and Baltimore Transfer Company, in conveying freight from the President Street Station to consignees in Baltimore.

The plaintiff then offered to prove by his own testimony that Mr. Shoemaker knew of this transaction, and approved of the same, saying it was better to have a friend in it than a stranger.

To the admission of this testimony, the defendant objected, but the Court overruled the objection and allowed the testimony to go to the jury; to this ruling the defendant excepted.

*Third Exception*—The plaintiff, after giving in evidence the testimony set forth in the previous bills of exception, proved by his own testimony that about the 1st of October, 1868, he was approached by the agent of the P. W. & B. R. R. Co., to deliver freight in Baltimore to consignees; that he went to Mr. Shoemaker and told him of the proposition, and informed him that he would do nothing to injure the Express Company, and asked him whether in his judgment this business would interfere with the company. Mr. Shoemaker took a week to consider, and at its close told me "he could see no objections to it," and if I could make any money in it, I had better do it, as it was better to have a friend than a stranger in it.

To this testimony the defendant objected; but the Court overruled the objection, and allowed the evidence to go to the jury; to this ruling of the Court the defendant excepted.

*Fourth Exception*—The plaintiff, after offering in evidence the testimony set forth in the previous bills of exception asked leave of the Court to amend his declaration, and leave being granted by the Court, the plaintiff filed an amended declaration, which in addition to the common counts, contained a special count setting forth a special agreement, and his willingness to perform his part thereof, but charging a wrongful dismissal by the defendant, six months before the expiration of his term of employment under the contract.

Whereupon the defendant moved the Court to grant it a continuance to enable it to plead to the new and amended

declaration, and insisted that under the following rule of the Court, it was entitled to time until the second rule day thereafter:

" 13th. When any rule to plead shall be laid on a rule day, the time for complying therewith shall be on or before the first succeeding rule day; and if such rule be entered on some other day than a rule day, the party upon which the same is laid shall comply therewith, on or before the second rule day thereafter."

The defendant further insisted that by the following rule, the first rule day thereafter was the first day of March next, and the second rule day the first day of April following:

" 10th. The first day of every month shall henceforward be the rule days; but if the first day of any month shall happen to fall on Sunday, or to be the first day of a term, the Saturday next preceding the same shall be the rule day, instead thereof. But if the party filing any pleading shall serve a written copy of the same upon the opposite party, or his attorney, the party so served shall be required to plead within fifteen days after the service of such copy."

The Court refused to grant the continuance, and laid a rule upon the defendant to plead to the amended nar. forthwith; to the refusal to grant the continuance, and to the order requiring the defendant to plead forthwith, the defendant excepted.

*Fifth Exception*—After the order of the Court directing the defendant to plead to the amended declaration, and after all the evidence had been given to the jury, as set forth in the defendant's previous bills of exception, the defendant filed a petition praying the Court to remove the cause into the United States Circuit Court for the Maryland District, according to the acts of Congress, in such case provided; upon the ground that from prejudice and local influence, the defendant would not be able to obtain justice in the Court where the cause was then pending.

The Court overruled the prayer of the petition and refused to remove the suit; to this action of the Court the defendant excepted.

*Sixth Exception*—The evidence upon which the theory of the following prayers is based, is sufficiently set out in the first, second and third exceptions and in the opinion of this Court. The plaintiff asked the following instructions:

1. If the jury believe from the evidence in the cause, that the defendant employed the plaintiff as assistant superintendent for the year, commencing January 1st, 1869, and ending December 31st, 1869, and that a few days prior to the 1st of July, 1869, the defendant discharged the plaintiff from its employment; and further find, that at the time said contract of employment was made and entered upon, the plaintiff was with the consent and knowledge of the defendant engaged in another business of indefinite duration as a member of the firm of Geegan & Co., agent for the Philadelphia, Wilmington and Baltimore Railroad Company, to deliver freight from President Street Depot, Baltimore, Md., to consignees in Baltimore, and that said business continued in every particular to be the same up to and at the time of the plaintiff's discharge; then the mere continuance of said business as a member of the firm of Geegan & Co., was not a sufficient cause for his dismissal, provided they find that the plaintiff faithfully and efficiently discharged all his duties as assistant superintendent to the defendant.

2. If the jury find that Samuel M. Shoemaker, was the superintendent or general agent of the defendant, for the division, consisting of Maryland, District of Columbia, and a portion of Virginia, with full authority to employ and discharge employés and agents, and direct their conduct, make contracts and exercise a general supervision over the defendant's business; and further find, that the said Shoemaker, as such superintendent or general agent, employed the plaintiff, then the jury may find that in regard to all matters and things pertaining to or affecting said contract of employment

the knowledge and consent of said superintendent or general agent was the knowledge and consent of the defendant.

The defendant then offered the following prayers: ·

1. That if the jury find from the evidence in the cause, that the plaintiff was employed by the defendant as assistant superintendent on or about the first day of June, A. D., 1869, for one year, at a salary of $4,000 per year, payable monthly, and that prior to the expiration of the said year, the plaintiff was discharged by the defendant, and his salary paid to the end of the month, during which he was so discharged, yet that the jury cannot find a verdict for the plaintiff unless they shall further find that such discharge was wrongful and without cause.

2. That if the jury shall find from the evidence in the cause, that the defendant contracted with the plaintiff to employ him as assistant superintendent of this District, from January 1st, 1869, to January 1st, 1870, at a salary of $4,000 a year, payable monthly, and that the plaintiff engaged to serve the defendant efficiently and in good faith as such assistant superintendent in the district, consisting of Maryland, District of Columbia, and part of Virginia and West Virginia, and if the jury shall find from the evidence, that he became a partner with others in the Philadelphia, Wilmington and Baltimore Transfer Company, and undertook to carry freight and packages from the President Street Station, and to deliver the same to consignees in Baltimore in violation of his duties to, and injuriously to the interest of the defendant, then the defendant had a right to determine its contract with him, and if the jury shall find it did so terminate its contract with the plaintiff on the 30th day of June, 1869, and paid the plaintiff the month's salary due him on the 30th of June, 1869, then the plaintiff is not entitled to recover.

[The plaintiff excepted specially to the foregoing second prayer, because it assumed as a fact that the business of the plaintiff as a member of the firm of Geegan & Co. was in violation of his duty to the defendant and injuriously

affected its interest, instead of submitting the matter to the jury.]

3. That if the jury shall find that during the service of the plaintiff as assistant superintendent of the defendant, as given in evidence, the said plaintiff was engaged in another business in competition with that of the defendant's, and which was calculated seriously to injure the business of the defendant, then such conduct afforded sufficient cause for the discharge of the plaintiff by the defendant.

4. That if the jury should find from the evidence in this cause, that the defendant contracted with the plaintiff to employ him as assistant superintendent of the Maryland district, from January 1st, 1869, to January 1st, 1870, at a salary of $4,000 per year, payable monthly, and that the plaintiff engaged to serve the defendant efficiently and in good faith as such assistant superintendent, yet if they shall further find that during the service of the plaintiff prior to June 30th, 1869, as given in evidence, the said plaintiff was engaged in another business in competition with that of the defendant, and it was calculated seriously to injure the business of the defendant, and shall find that he was notified by the defendant that he must cease to carry on said business, and that notwithstanding such notice (if they shall find such notice) he continued to carry on such business, and that the defendant then dismissed him, then such dismissal was justifiable, and the plaintiff cannot recover in this action, provided the jury shall find he was paid by the company for his services up to the time of his dismissal.

The Court granted the prayers of the plaintiff and rejected the second, third and fourth prayers of the defendant, its first prayer being conceded. To this action of the Court the defendant excepted, and the verdict and judgment being for the plaintiff, it appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON, ALVEY and ROBINSON, J.

*J. Dean Smith* and *Wm. Pinkney Whyte,* for the appellant.

The declaration of the plaintiff to a coëmployé, and of his intentions to claim a whole year's salary, could not be evidence against the appellant.

There had been no proof at the time of taking the second exception, of any authority, general or special, in Samuel M. Shoemaker, to permit his subordinate to engage in any business hostile to the defendant.

The proof of his agency and its character and extent ought to have been first shewn before any proof of his approval of the act of Trego could be properly given in evidence. Nor indeed was there proof, at that time, that Shoemaker had authority to make a *yearly* contract with any employé. The declarations of an agent are not admissible to bind his principal until the *agency* is first established. *Marshall vs. Haney,* 4 *Md.,* 511; *Atwell vs. Miller,* 11 *Md.,* 339; *Rosenstock vs. Tormey,* 32 *Md.,* 182.

The agency to be proved is either to be a general or special one, and its character to be fully established. An agent for one purpose cannot of course bind his principal by acting outside of his particular duty. *Merchants' Bank vs. Marine Bank,* 3 *Gill,* 125.

Conduct by a servant calculated seriously to injure his master's business will justify the discharge of the servant. And this rule applies when the master is a corporation. *Angell & Ames on Corp.,* 423; *Smith on Master and Servant,* 73–77; (75 *Law Library,* 75;) *Lane vs. Phillips,* 6 *Jones (N. C.) Law,* 445; *Chitty on Contracts,* (10 *Am. Ed.,*) 629; *Jones vs. Jones,* 2 *Swan, (Tenn.,)* 605, 608; *Singer vs. McCormick,* 4 *W. & S.,* 265; *Cunningham vs. Fonblanque,* 6 *C. & P.,* 44; *Reed vs. Dinsmore,* 9 *C. & P.,* 588; *Lord Bruce's Case,* 2 *Strange,* 819.

*Thomas J. McKaig, Jr.,* and *Arthur W. Machen,* for the appellee.

The evidence in the first bill of exception, tending to prove that the appellee denied the right of the appellant to dis-

charge him, and that whether permitted to perform the service or not, he should hold the appellant responsible for his year's salary, was clearly admissible for the purpose of satisfying the jury that between the parties there was no recision of the contract.

The testimony in the second and third bills of exception was properly admitted by the Court, in order to establish the fact that at the time the contract of employment was made and entered upon, the appellee was, with the knowledge and consent of the general agent of the appellant, and therefore *constructively* of the appellant itself, engaged in another business, (which was subsequently set up by the appellant as a justification of its discharge of the appellee,) and therefore the appellee's continuation in said business, unless otherwise expressly stipulated, was necessarily a part of his contract with the appellant. *Story on Agency*, secs. 140, 140, *b* ; *Hiern vs. Mill*, 13 *Ves.*, 120 ; *Harvey vs. Blanchard*, 13 *N. H.*, 145 ; *Sutton vs. Dillage*, 3 *Barb.*, 529 ; *Fulton Bank vs. The New York and Sharon Canal Co., et al.*, 4 *Paige Ch. Rep.*, 127 ; *Mechanics' Bank of Alexandria vs. Seton*, 1 *Peters*, 309 ; *Bank of U. S. vs. Davis*, 2 *Hill*, 461 ; *McEwen vs. Montgomery Mut. Ins. Co.*, 5 *Hill*, 101 ; *Toll Bridge Co. vs. Betsworth*, 30 *Conn.*, 380 ; *Wing vs. Harvey*, 5 *De Gex*, *M. & G.*, 265.

The powers of a *general manager*, or *superintendent* of a company, are not subject to the limited construction applied to inferior agents, and it is not necessary to define or prove the extent of his authority. *Walker vs. Great Western Ry. Co., Law Rep.*, 2 *Ex.*, 228 ; *Goff vs. Great Northern Ry. Co.*, 30 *Law Journ.*, *N. S. Q. B.*, 151.

And this principle obtains with peculiar force in the case of a *foreign* corporation transacting business here. In such a case, the corporation has neither functions nor existence in Maryland, except through its general superintendent, who is its representative. *Balto. and Ohio R. R. Co. vs. Glenn*, 28 *Md.*, 319.

The rule " that a principal is bound, not only by such acts of the agent as are within the scope of the agent's *actual*

authority, but by such acts as are within the larger margin of an apparent or *ostensible* authority derived from the representations, acts, or default of the principal," in its application to a corporation principal, was recognized and applied in *Totterdell vs. Fareham Brick Co., Law Rep.,* 1 *C. P.,* 674. And see *Northern Central Ry. Co. vs. Bastian,* 15 *Md.,* 494.

The service in question was a yearly service; and the dismissal in the middle of the year was *prima facie* wrongful. *Beeston vs. Collyer,* 4 *Bing.,* 309.

To justify a master in dismissing a yearly servant before the expiration of the year, there must be, on the part of the servant, either *moral misconduct, wilful disobedience* or *habitual neglect. Callo vs. Brouncker,* 4 *Car & P.,* 518.

The ground relied on ought to be one which the defendant *bona fide* acted on. *Smith vs. Allen,* 3 *Foster & Finlason,* 162.

The appellant's three prayers rejected by the Court, were, in addition to the assumption of fact in the second prayer, fatally defective, because under the hypotheses of all these prayers, the jury were authorized to find against the appellee without regard to his engagement in the business of the Philadelphia, Wilmington and Baltimore Rail Road Company, being with the knowledge and consent of the appellant. This fact was an essential element of the appellee's case, and by these instructions it was totally withdrawn from the jury, although the finding of it by them would have defeated the right of discharge claimed by the appellant. The conclusive character of this objection to these prayers is fully and clearly shown in the case of *Adams vs. Capron,* 21 *Md.,* 205. See also *McTavish vs. Carroll,* 7 *Md.,* 366; *Riggin vs. Patapsco Ins. Co.,* 7 *H. & J.,* 291, and *Thomas vs. Sternheimer,* 29 *Md.,* 268.

ALVEY, J., delivered the opinion of the Court.

This was an action of *assumpsit,* instituted by the appellee against the appellant, to recover the sum of $2,000, the balance of salary for the year 1869. The ground of the action

is, that the appellant, through its agent, had contracted with the appellee to employ him for the entire year of 1869, at a salary of $4,000, payable monthly, and that he was wrongfully dismissed from the service of the appellant on the first of July, 1869, up to which date his salary was paid.

At the trial in the Court below several bills of exceptions were taken by the appellant; but as the fourth and fifth exceptions involve questions of a preliminary character, we shall dispose of them before considering the questions raised by the other exceptions, which are of a different nature.

And as to the fourth exception, we discover nothing in it to justify a reversal of the judgment appealed from. Whether a continuance should have been ordered, after the amendment of the appellee's declaration, was matter of discretion, which is exclusively confided to the Court in which the amendment takes place; and no appeal lies from its exercise. *Code, Art.* 75, *secs.* 23 and 24. If the Court below was not satisfied that the ends of justice required a continuance, it was clearly right in refusing to grant it; and no mere rule of Court could be allowed to operate to divest such discretion, or in any manner to change or modify the statutory provision on the subject. Rules of Court must not be in conflict or inconsistent with the Statute law of the State.

The fifth exception was taken to the refusal of the Court to order the removal of the cause into the Circuit Court of the United States for the district of Maryland; and, under the facts disclosed by the record, we think the Court was entirely right in such refusal.

The cause was in progress of trial, and three bills of exceptions had been taken to the rulings as to the admissibility of evidence, when the application for removal was made; and according to what we regard as the true and plain interpretation of the Act of Congress, under which the right of removal is claimed, being that approved March 2d, 1867, entitled "An Act to amend an Act entitled 'An Act for the removal of causes in certain cases from State Courts,' approved July 27,

1866," the application came too late to stay the further progress of the trial. By this amendatory Act of 1867, it is provided, "That where a suit is now pending, or may hereafter be brought in any State Court, in which there is a controversy between a citizen of the State in which the suit is brought and a citizen of another State, and the matter in dispute exceeds the sum of $500, exclusive of costs, such citizen of another State, whether he be plaintiff or defendant, if he will make and file, in such State Court, an affidavit stating that he has reason to and does believe that, from prejudice or local influence, he will not be able to obtain justice in such State Court, may, at any time *before the final hearing or trial of the suit,* file a petition in such State Court for the removal of the suit into the next Circuit Court of the United States to be held in the district where the suit is pending, and offer good and sufficient surety for his entering in such Court, on the first day of its session, copies of all process, pleadings, depositions, testimony, and other proceedings in such suit, and doing such other appropriate acts as, by the Act to which this Act is amendatory, are required to be done upon the removal of a suit into the United States Courts." 14 *Statutes at Large,* 306, 558. This Act, so far as it is applicable to defendants, is but a modification of the 12th section of the Judiciary Act of 1789, and while by the Act of 1789 the application for removal was required to be made at the time of the defendant's appearance entered in the cause, by the words of the latter Act of 1867, the right to apply for removal is extended to any time *before* final hearing or trial; and as, in this case, the trial had actually commenced, and several questions in its progress had been decided before the application was filed, such application cannot be said to have been made before trial. The application should have been made before the hearing or trial commenced; for otherwise it would be impossible to determine at what stage of the trial the application would be proper. Could it be made at the last stage of the trial, after all the legal questions had been

decided by the Court, and the facts submitted to the jury, but before the verdict found? We can hardly suppose that any one would seriously attempt to maintain such a proposition. And if not in such case, at what prior stage of the trial would the application be admissible? We think it clear, that it is not at any time before the conclusion, but at any time before the commencement of the trial, that the application to remove must be made.

It was contended, however, that because the appellee was allowed to amend his declaration after the commencement of the trial, by inserting a special count therein, there was a new issue made, and that, as to that part of the case, the trial did not in fact commence until after pleas filed to the amended declaration, and issues joined thereon; and as the application to remove was made before the amended declaration was pleaded to, it should be regarded as made in due time. But in this view of the subject we do not concur. The pending trial did not terminate by the leave to amend; for as the substance of the issue was not materially changed by the amendment, the jury was not required to be re-sworn; but all the evidence previously given remained before them, as if no amendment had been make. *Garrett vs. Dickerson,* 19 *Md.,* 418. Amendments that are proper to secure the trial of the real merits of the cause may be made at any time before the jury retire to make up their verdict; and unless the issue is materially changed by the amendment, or a continuance is deemed necessary to the ends of justice, where the amendment is made during the course of the trial, a juror is never withdrawn, as was the practice prior to the Act of 1852; but the cause proceeds as if no amendment had been made. *Code, Art.* 75, *secs.* 23, 24. The making of the amendment, therefore, afforded no ground for allowing the application for removal.

But the failure to make the application in due time was not the only objection to the right of removal in this case. The appellant is alleged to be a corporation chartered by the

State of New York, where it has its principal office, and therefore claims to be regarded as a citizen of that State, and thus within the provisions of the Act of Congress referred to, which was passed to regulate the exercise of jurisdiction of the Federal Courts over controversies between citizens of different States, conferred by section 2, Article 3, of the Constitution of the United States. And, according to the decisions of the Supreme Court of the United States, the appellant is certainly entitled to be so regarded and treated, in reference to the question of Federal jurisdiction; for it is now settled, by a series of decisions of that high tribunal, that where a corporation is created by the laws of a State, the legal presumption is, that its members are citizens of the State in which alone the corporate body has a legal existence; and any suit by or against such corporation, in its corporate name, must be presumed to be a suit by or against citizens of the State creating the body corporate; and that no averment or evidence to the contrary is admissible for the purpose of withdrawing the suit from the jurisdiction of the Courts of the United States. *Louisville, Cin. & Charleston Railroad Co. vs. Letson,* 2 *How.,* 497; *Marshall vs. The Balt. & Ohio Railroad Co.,* 16 *How.,* 325; *Covington Drawbridge Co. vs. Shepherd,* 20 *How.,* 231; *Ohio & Miss. Railroad Co. vs. Wheeler,* 1 *Bl.,* 286. But while this is the case in reference to the defendant, it no where appears in the record that the plaintiff is a citizen of Maryland; and according to the recent case of *The Insurance Co. vs. Francis,* 11 *Wall.,* 210, in order to entitle a party to the right of removal under the Act of Congress, it must affirmatively appear, either by the pleadings in the cause, or other appropriate allegation, that the party desiring the removal is a citizen of another State than that in which the suit is pending, and that the adverse party is a citizen of the particular State in whose Court the suit was brought. So that, in any aspect of the case as the record presents it, it would have been erroneous for the Court to have granted the prayer for removal.

Having disposed of the questions raised by the fourth and fifth bills of exceptions, we shall now proceed to consider the other questions in the case, and which relate to the admissibility of evidence, and the propriety of granting and refusing certain instructions to the jury. And before referring particularly to each several exception remaining to be considered, we shall state the leading and undisputed facts of the case, and the general principles of law that would seem to be applicable to them.

The appellee was employed, according to his own testimony, by the appellant, from 1852 to the time of his discharge in July, 1869, as assistant superintendent, and the contract of employment was made with Samuel M. Shoemaker, as the appellant's agent and general superintendent for this district. His employment was yearly, from January to January; and in 1867 his salary was $4,000, and continued at that amount to the close of his service. He was notified of his discharge on the 28th of June, 1869, to take effect from the 30th of that month, and no reason for the discharge was given at the time. He further proved, by his own evidence, that from November, 1868, up to the time of his dismissal, he had been interested, with certain other parties, as the Philadelphia, Wilmington and Baltimore Transfer Company, in conveying freight from the President street railroad station to consignees in Baltimore; and that the business of the appellant was and is to transport freight from city to city, and that, with exception of freight transported by its own company, it did not deliver freight to consignees in Baltimore. He also proved, on cross-examination, that in April or May, 1869, he was notified by Shoemaker, the general superintendent, that the appellant disapproved of his connection with the Baltimore Transfer Company, and that it demanded that he should cease his connection with that concern; that he tried to sell out his interest, but did not; that he waited, in his own language, " for something to turn up." He also proved, that at the time of his dismissal he had overdrawn

the salary due to that date, some $500, which he afterwards paid back. That he had authority over the subordinate officers of the appellant. These facts were all proven by the appellee himself, and therefore, so far as he is concerned, and as against him, may be taken as true.

It was also proved, that the authority of Shoemaker, as general superintendent of the Maryland district, was to supervise the working and general management of the business and affairs of the company in such district, and to appoint and discharge agents and other subordinate employés. It was proved, moreover, that Shoemaker was well aware of the appellee's connection with the Transfer Company, from the time such connection commenced.

There was also proof tending to show, that in fact the operations of the Transfer Company, of which the appellee was a member, did injuriously conflict and compete with the operations and interest of the appellant, in Baltimore.

On this state of case, the main question is, whether there was justification for the dismissal of the appellee; and this involves the further question as to the extent of the authority of Shoemaker, the general superintendent, by whom the appellee was employed and retained in service, with knowledge of the fact that the latter was connected with the Baltimore Transfer Co.; the other questions raised, and to be decided, being subordinate to these.

Whether there existed, as matter of fact, sufficient ground for the discharge of the appellee, was, of course, a question for the jury; but, as a principle of law, it may be stated generally, that the appellee, by the nature of his employment, was impliedly bound to serve the appellant faithfully, and to refrain from doing any act knowingly and wilfully which might affect injuriously the business of his employer. It has been expressly decided, that a servant, while engaged in the service of his master, has no right to do any act which may injure his trade, or undermine his business. *Nichol vs. Martyn,* 2 *Esp. Rep.,* 732. And in the case of *Lacy vs. Osbaldiston,* 8

*C. & P.*, 80, brought for wrongfully discharging the plaintiff as an acting manager of a theatre, it was held, that if the plaintiff had so conducted himself as to render it injurious to the interest of the theatre to retain him, the proprietor might lawfully dismiss him; the learned Judge, in summing up, saying to the jury, that, as to the dismissal, it was a question of fact whether the plaintiff was so conducting himself as that it would have been injurious to the interests of the theatre to have kept him; and if so, he should have no difficulty in saying that it would be a good ground of dismissal. And the same principle is distinctly recognized by this Court, in the case of *Jaffray vs. King*, 34 *Md.*, 220.

But it is insisted by the appellee that, as he became interested in the Baltimore Transfer Company in the fall of 1868, with the knowledge and consent of Shoemaker, the general superintendent of the appellant, and was afterwards retained in service as he had been before, by such superintendent, it became a condition in the contract of employment that he should be allowed to hold such connection with the Transfer Company, and that the appellant is, in effect, estopped from setting up any such cause of dismissal as is relied on by it. And this, of necessity, involves the question of the extent of Shoemaker's authority, and the effect of his knowledge of and acquiescence in the appellee's connection with the Transfer Company.

Now, assuming that the authority of Shoemaker was as broad and comprehensive as contended by the appellee, that is, that he was authorized to employ and discharge employés and agents, and direct their conduct, make contracts, and exercise generally supervision over the business of the appellant, in the particular division; still, we think it would be difficult to maintain that such delegation of authority included power in the agent to license or authorize one of the coëmployés, who was himself entrusted with large and important control over the business transactions of the appellant, to engage in and carry on a business in competition with that which he

had been employed to foster and promote. To bind the appellant as principal it is incumbent on the appellee to show that the agent, with whom he dealt, had competent authority. The authority shown is simply that by which the agent was empowered to enter into all such contracts as were usually and properly entered into in the ordinary conduct and management of the business. To this extent and no further can the authority here shown be carried by any fair construction of it; nor would it be rational to presume that it was the intention of the principal to clothe the agent with authority to contract in a manner to inflict serious injury on its business. Was then the license or authority given to the appellee by the general superintendent, to maintain the connection with the Transfer Company, if it did in fact compete with and was injurious to the business of the appellant, such an act as was done in the usual and ordinary conduct and management of its affairs? To maintain such a proposition it would require affirmative proof on the part of the appellee; for it certainly does not result by any reasonable construction of the power shown. If powers like the present were construed as contended for by the appellee, there would be no safety for principals. Instead of having their business supervised in their own interests, by agents bound to them by obligations of fidelity and good faith, they might be compelled to retain in their service, at large salaries, agents engaged at the time in undermining and destroying their trade; a state of things that no principal should be presumed to have authorized. The rule of construction in such cases, is well settled. If the authority is special, says Judge STORY, (*Sto. on Ag.*, sec. 83,) "it is construed to include only the usual means appropriate to the end. If the authority is general, it is still construed to be limited to the usual means to accomplish the end. Even if a general discretion is vested in the agent, it is not deemed to be unlimited. But it must be exercised in a reasonable manner, and cannot be resorted to in order to justify acts, which the principal could not be

presumed to intend ; or which would defeat, and not pro-
mote, the apparent end or purpose, for which the power was
given."

This rule, for the construction of powers like the present,
is well stated, with many illustrations of its application from
decided cases, by the editors in 1 *Amer. Lead. Cases*, 567.
It is there said, that " it is a universal principle in the law of
agency, that the powers of the agent are to be exercised for
the benefit of the principal *only, and not of the agent or of
third parties.*  A power to do all acts that the principal could
do, or all acts of a certain description, for and in the name of
the principal, is limited to the doing of them for the use and
benefit of the principal only, *as much as if it were so expressed.
Stainer vs. Tysen*, 3 *Hill*, (*N. Y.,*) 279, 281; *North River
Bank vs. Aymar*, 3 *Hill*, (*N. Y.,*) 263, 266.  A power, there-
fore, in the most general terms, to draw and indorse bills for
and in the name of the principal, will not authorize a draw-
ing or indorsing in his name for the accommodation of third
persons. *Nichols vs. State Bank*, 3 *Yerger*, 107 ; *Wallace vs.
Branch Bank at Mobile*, 1 *Judges', Ala.*, 565; *St. John vs.
Redmond*, 9 *Porter*, 428 ; *The Planters' Bank vs. Cameron*,
3 *Sm. & Mars.*, 609, 613 ; or for the benefit of the agent.
*Suckley vs. Tunno & Cox*, 1 *Brevard*, 257 ; *S. C.,* 2 *Bay*, 505 ;
and this principle is illustrated in the case of partnership.
A power in the most general terms to do all and everything
that the agent may think proper in any business the princi-
pal may be concerned or interested in, will not authorize the
agent to pledge the property of the principal for his own
debt. *Hewes vs. Dodridge*, 1 *Robinson's Va. Rep.*, 143.  The
most guiding principle in the construction of powers, is to be
derived from a consideration of the *purpose* which the agent,
or other depositary of power, *is appointed to accomplish.*"

Seeing then that the power of the agent is delegated exclu-
sively for the benefit of the principal, and is to be exercised
alone for the promotion of what is supposed to be his interest,
there is clearly no ground for contending that the agent could

bind the principal by any such license or authority as that given the appellee in this case, if it be found that such license or authority was or could be used to the prejudice and injury of the appellant; and, if such be the fact, the appellee himself must be taken to have been cognizant of it, and therefore bound to refrain from forming the connection with the Transfer Company.

It is insisted, however, that because the general superintendent of the appellant had notice, at the time of the retention of the appellee in service for the year 1869, of the latter's interest in the Transfer Company, that, notwithstanding the agent may have had no authority to authorize such a connection on the part of the appellee, such notice is in law notice to the principal, and as the appellee was retained in service with such notice, the employment became subject to the appellee's right to retain his interest in the Transfer Company. But to this proposition we do not assent. It is true, notice to an agent of facts arising from and growing out of the subject-matter of his agency, is constructive notice to the principal. But this rule has no application to the case where the question is, whether the act relied on to bind the principal, was done within the limits and scope of the agent's authority or not. If knowledge of the agent could fix liability upon the principal in such case, irrespective of the limit of the former's authority, the cases of *Grant vs. Norway*, 10 *C. B.*, 665; *Hubbersty vs. Ward*, 8 *Exch.*, 330; *Coleman vs. Riches*, 29 *Eng. L. & Eq. Rep.*, 323, and many other cases to which reference could be made, would have resulted in very different judgments from what they did. In the first two cases named, it was held, that, though a master of a vessel has a general authority to execute bills of lading for goods shipped, he has no power to charge the owner by signing bills of lading for a greater quantity of goods than those on board, and that a bill of lading so signed would not bind the owner, even in the hands of innocent third parties. And in the last named case, where the agent of a wharfinger, whose duty it was to

give receipts for goods actually received, gave a receipt for goods which had not been received, the principal was held not to be responsible, even to third parties who had been deceived by the receipt, because it was not within the scope of the agent's authority in the course of his employment, to give such a receipt. In this case the appellee was himself an agent of the appellant, and he must be supposed to have known something of the extent of the authority of the superior agent, upon whose knowledge and acquiescence he relies.

It is true, the act of the agent, though unauthorized at the time, may become binding upon the principal, by ratification and adoption. But to make such ratification effectual it must be shown that there was previous knowledge on the part of the principal of all the material facts and circumstances attending the act to be ratified. *Bell vs. Cunningham*, 3 *Pet.*, 81; *Owens vs. Hull*, 9 *Pet.*, 607; *The Pennsylvania, Delaware and Maryland Steam Nav. Co. vs. Dandridge*, 8 *Gill & John.*, 249; *Mayor & C. C. of Balto. vs. Reynolds*, 20 *Md.*, 1. If the principal assents to the act while ignorant of the facts attending it, he may disaffirm it when informed of such facts. 6 *Pick.*, 198. And it is equally true, that where an act is done in behalf of the principal, though not within the authority of the agent, if the former has full knowledge upon the subject, and from which act he derives benefit, he must dissent and give notice of the fact within a reasonable time, or his assent and ratification will be presumed. *Brigham vs. Peter*, 1 *Gray*, 147. So that, in this case, if the services of the appellee were accepted by the appellant, with full knowledge of the former's connection with the Transfer Company, sanctioned and authorized by its agent, at the time of the last yearly employment, and of the manner in which the operations of that company might affect the business of the appellant in Baltimore, the latter was bound to signify its dissent within a reasonable time from the time it became possessed of the knowledge; or otherwise be concluded by a presumed assent and ratification. But then, it would be incumbent

upon the appellee to show notice in fact on the part of the appellant, and at what time it was received.

With these principles in view, there can be but little difficulty in disposing of the remaining exceptions.

The first exception was taken to the admissibility in evidence of the declaration of the appellee himself, made to Shoemaker, the superintendent, after notice of the fact of dismissal, to the effect, that he intended to hold the appellant responsible for his year's salary. Upon what principle this declaration was admitted in evidence, we are at a loss to understand. It was in fact wholly immaterial. It served to prove nothing that was essential to the case. If the appellee had been wrongfully dismissed, as he alleges, it required no such notice or declaration to entitle him to maintain his action; and as the order for the dismissal came from the appellant, it is manifest that Shoemaker had no power or authority to revoke it, or in any manner to act upon the notification of the appellee, so as to bind his principal. The mere declaration of the party himself, made to another not authorized to receive or act upon it, is clearly not admissible; and the Court was therefore in error in allowing such a declaration to go to the jury. 29 *Md.*, 194.

The second and third exceptions present in effect but one and the same question; and that is, whether Shoemaker's knowledge and sanction of the appellee's connection with the Transfer Company before the commencement of the year's service of 1869, so affected the appellant as to preclude the right to dismiss the appellee because of such connection.

We have already said that the power shown to have been delegated to Shoemaker, as superintendent, did not authorize him to sanction and license the appellee's connection with that company, if in point of fact it was a competing concern with the appellant. The proof stated in these bills of exceptions, it is true, tended to show that, at the time, it was the opinion of the agent that the connection of the appellee with the Transfer Company would not be injurious to the interests of

the appellant; but we know of no rule by which the principal is bound by the mere opinion of his agent, unless authorized to give it to influence the action of third parties.

This evidence might have been made admissible, if the appellee had proposed to follow it up with other evidence to prove that such knowledge of the agent had been communicated to the principal, and that the latter had ratified the sanction given by the agent, either expressly or by presumption. But no such offer was made, and it was therefore error to allow the evidence to be given to the jury.

We come now to the prayers that were offered, some of which were granted and others refused, contained in the appellant's sixth exception.

The first prayer on the part of the appellee, and which was granted, we think correct, and properly instructed the jury as to the law of the case. We do not understand that this instruction was seriously questioned. But the second prayer of the appellee, which was also granted, we regard as essentially erroneous, and should have been refused. It asserts, after stating the extent and limit of the authority supposed to have been delegated to Shoemaker, and the employment by him of the appellee, that the jury were at liberty to find "that in regard to all matters and things pertaining to or affecting said contract of employment, the knowledge and consent of the said superintendent or general agent, was the knowledge and consent of the defendant." This, if it means what we suppose it does, or was intended to mean, is a proposition that cannot be sustained. We have already said that the knowledge of the agent in regard to matters with which he was connected beyond the scope of his authority is not the knowledge of his principal, and that the doctrine by which notice to the agent is to be regarded as notice to his principal does not apply to a case like the present. If the agent transcended his authority in giving sanction to or allowing conduct on the part of the appellee that afforded just ground of complaint by the principal, the latter had the undoubted

right to repudiate the act of its agent. And though it may be said in this case, that the license or sanction given by the superintendent to the appellee to form the connection with the Transfer Company, in some sense inhered in the contract of employment, still, it is an established principle, that if an agent does an act within the scope of his authority, and at the same time does something more which he was not authorized to do, and the two matters are not inseparable, even though both may relate to the same subject, that which was authorized is alone binding, and the other void, so far as the principal is concerned. 2 *Greenl. Ev.*, sec. 59. Here the matters are not only separable, but are quite distinct, the sanction given to hold the relation to the Transfer Company being collateral to the employment of the appellee.

The second prayer of the appellant would be free from objection, if it had been more explicit in submitting to the jury the question whether the appellee's connection with the Transfer Company, was in violation of his duties to the appellant, and injurious to its interest. Objection was taken to the prayer in the Court below on the ground that it assumed that such connection of the appellee was in violation of his duty, and that the interest of the appellant was affected thereby. If such be the proper reading of the prayer it would certainly render it objectionable; and, upon a careful examination, we think it is susceptible of the construction placed upon it by the appellee, whatever may have been the intention of its author; and it was therefore properly rejected. The prayer should have been explicit and free from all ambiguity in submitting that question to the jury, as it was one most material in the case.

The fourth prayer of the appellant, however, is free from the objection taken to the second, and should have been granted. It fairly submitted to the finding of the jury all the facts upon which the right of dismissal depended; and as these two prayers, the second and fourth, embrace the more general proposition announced in the third prayer of

the appellant, this latter prayer may be regarded as immaterial, and hence it becomes unnecessary to say more in reference to it.

For the errors stated, we shall reverse the judgment of the Court below, and award a new trial.

<div style="text-align:center">

*Judgment reversed and*

*new trial awarded.*

