## BARBOUR COUNTY vs. HORN.

[ACTION AGAINST COUNTY FOR DAMAGE OCCASIONED BY FALL FROM DEFECTIVE BRIDGE.]

1. *Action against county for damage from defective bridge; what allegation necessary.*—In an action against a county for damages occasioned by a fall from an imperfect bridge, established under contract with the commissioners court, made before the adoption of the Code of Alabama, the declaration should show that the bridge was a *toll-bridge*, and that the contract was such an one as the commissioners court had authority to make.

2. *Same; evidence of wealth or poverty of plaintiff or defendant irrelevant; evidence of disabling effect of injury is material.*—In an action against the county, to recover damages on account of injuries inflicted by a fall from a bridge built by contract with the commissioners court, the jury can not look to the wealth or poverty of the county or of the plaintiff, in making up the amount of their verdict. But they may consider the disabling effects of the injuries, whether past or prospective.

APPEAL from the Circuit Court of Henry.
Tried before Hon. J. McCALEB WILEY.

The complaint in this case is as follows: William D. Horn, plaintiff, *vs.* Barbour County, defendant. The plaintiff claims of the defendant twenty thousand dollars, as damages sustained by him in the loss of his health and in the permanent loss of the use of his limbs, and in the permanent impairment of his capacity to discharge his duties

as husband and parent, and to provide for his family and dependents, resulting directly and immediately from his fall from a certain bridge across Lick creek, in Barbour county, Alabama; which bridge, more than six years before said fall occurred, had been built and completed by contract with the court of county commissioners for said county, over said creek, and on the public highway in said county leading from Glennville, in said county, to Clayton, in said county, since known as the Glennville and Florence road. Said bridge was built by the order of, and under contract with, said commissioners court; and plaintiff avers that the only guaranty, by bond or otherwise, which was required or authorized by said commissioners court of the undertaker and builder of said bridge, was that he, the undertaker and builder of said bridge, enters into bond with good security to keep said bridge in good passable order for six years from the day of its completion, and that the aforesaid guaranty was required or authorized by an order of said commissioners court, made by it on the 16th day of August, 1852, and entered on its records. The plaintiff further avers, that more than six years had elapsed from the day of the completion of said bridge before the said fall, or any of the grievances or injuries herein complained of and stated, occurred; and that the said guaranty by bond, required or authorized by said commissioners court as aforesaid, had expired by the lapse of more than six years from the day of the completion of said bridge before said fall, or any injury to plaintiff herein stated and complained of occurred; and that at the time said fall and injuries to plaintiff herein stated and complained of occurred, there was no valid or subsisting guaranty, by bond or otherwise, under any order or authority of said commissioners court, or otherwise. The plaintiff avers, that after the expiration of said guaranty referred to and mentioned in said order of said commissioners court, to-wit, on the 10th day of October, 1858, when plaintiff was crossing said bridge in his buggy drawn by his horse, the said bridge was defective, unsound, and unsafe, and the said horse became

frightened at a hole in said bridge, and by backing with said buggy, in consequence of such alarm, suddenly, and without any fault on the part of plaintiff, and without any ability on his part to prevent its inevitable results, and in consequence of the said defective, unsound and unsafe condition of said bridge, precipitated said plaintiff and his horse and buggy over and from said bridge into the stream below, thereby causing said plaintiff serious and permanent bodily harm, and producing such physical disability as to greatly impair the health of plaintiff, and to destroy his power of locomotion and his ability to work and labor, and also greatly damaged his said horse and buggy, which were of great value, to-wit, of the value of one thousand dollars. And plaintiff avers, that within one year next after having sustained injury and damage as aforesaid, his account or claim for said damages sustained as aforesaid was regularly presented to the court of commissioners of said county for allowance and payment; and the said last mentioned court refused to recognize, allow or pay his said claim or account, or any part thereof.

Defendant demurred, in short by consent, and assigned as grounds of demurrer—1st. That the complaint sets forth no cause of action. 2d. That the complaint sets forth that the injury complained of took place on the 10th day of October, 1858, and also avers that the bridge, by the defects of which plaintiff says he was injured, was built by contract with the court of commissioners of Barbour county, under an order of said court made on the 16th day of August, 1852. The court overruled each of said demurrers, and defendant excepted to such ruling. The parties then went to trial on the plea of the general issue, with leave to give in evidence any matter of defense or in bar which might be specially pleaded under said issue, with like leave to plaintiff to reply. On the trial, the evidence conduced to show, among other things, that the plaintiff was a poor man, and dependent upon his labor for a support; that the injuries were of a very painful character; that plaintiff was subjected to expense, and that, besides

the immediate loss of time consequent, plaintiff was permanently disabled. The trial of the case, on application of the appellant, was changed to the county of Henry. The opinion of the court contains such other facts as are material.

The court charged the jury, among other things, as follows:

"The court of county commissioners had the right, under the law of this State in existence in the year 1852, to contract for the erection of bridges on public roads, and to require a bond from the builders to keep the bridge in a safe condition for a stipulated time, and if any one is injured, in consequence of a failure to keep the bridge in a safe condition during the time the bond or guaranty was in operation, then the person injured must look to the makers of the bond, who were bound to keep the bridge in a safe condition during the time they bound themselves to do so. But the builder of the bridge and his securities were only bound for injuries done within the time they obligated themselves to keep the bridge in a safe condition."

The court further charged the jury, that "if the plaintiff was injured as alleged, and such injury occurred after the expiration of the time which the builder was bound by his contract to keep said bridge in repair, that then such builder was not liable on said contract, but that the county of Barbour was liable to plaintiff for the injuries aforesaid."

To each of the charges so given the defendant excepted.

The defendant requested the court to charge the jury, among other things, that

"Neither the fact that Barbour county, with its wealth, is defendant, nor the fact of the poverty or family distress of plaintiff, Horn, nor the distress or mental suffering of plaintiff, in view of the consequences which his disability accruing from said injury may have brought, or may bring even upon his own family, can be taken into the account by the jury, in estimating the amount of damages or compensation which the county ought to pay plaintiff for said in-

juries." The court refused to give this charge, and the defendant excepted.

The ruling of the court on the demurrer, and the various charges given and the charges refused, are now assigned for error.

D. SEALS, STONE & CLOPTON, and FOSTER, for appellant. PUGH & BAKER, and OATES & WOOD, *contra.*

PETERS, J.—This was an action on the case for damages occasioned by a fall from an insecure bridge, built by contract with the commissioners court in 1852, before the Code of Alabama went into effect as the law of the State. There is but one count in the complaint, and this is founded wholly upon our statutes. There was a demurrer to the complaint which assailed both the sufficiency of the statement of facts set forth in the count, and the formality of the statement. The demurrer was overruled, and the parties went to trial on the plea of the general issue, with leave to give all proper special matter in evidence to the jury. There was a verdict for ten thousand dollars for the plaintiff below, against the defendant, and judgment accordingly for this sum and costs. From this judgment the county of Barbour appeals to this court, and here assigns several errors on the overruling of the demurrer in answer to the plaintiff's complaint, and certain other proceedings in the court below in the charges and rulings adverse to the said defendant, as shown in the bill of exceptions taken on the trial below.

The demurrer to the complaint involves the most prominent question in the case as now made before this court. And this requires a construction of the statute upon which the right to recover on the facts stated in the complaint depends. And I proceed at once to the discussion which is thus urged upon the court.

The law, before the promulgation of the Code, which defines the powers of the court of county commissioners, or commissioners of revenue and roads, is found in Clay's

Digest. This embodiment of our statutes includes "all the statutes of a public and general nature in force at the close of the session of the general assembly in February, 1843." Title-page Clay's Digest. The law, as found in Clay's Digest, authorized the commissioners court to "exercise all the power in relation to roads, bridges, highways, and ferries and causeways" which were at that time "given to and exercised by the orphans or county court."—Clay's Digest, p. 149, § 1. This grant of jurisdiction seems to have been taken from the act to repeal and amend an act "to regulate the proceedings in the courts of law and equity in this State," which bears date June 14, 1821.—Toulmin's Laws of Ala. pp. 191, 200, § 28. In 1839, the legislature passed another statute defining the powers of the commissioners court, in which it is commanded, that "in all cases where there is no legislative enactment on the subject, the commissioners courts of the different counties shall have power and authority to adopt rules and regulations in relation to *toll-bridges*, causeways and ferries, as well as ways and public roads, and may, at any time, levy a tax to *build causeways* and *bridges*, when in their opinion the public good requires it; when the work is too great to be done by the proper overseer and his hands, or when no one applies, as hereinafter prescribed, to establish the same; *Provided*, That whenever any such work is necessary on the line between two counties, the same shall be done at the mutual expense of said counties, in proportion to the amount of taxable property in each."—Clay's Dig. p. 513, § 25. This enactment clothed the commissioners court with power and authority to adopt rules and regulations in relation to toll-bridges, causeways and ferries, as well as (private?) ways and public roads, and to levy taxes to build causeways and bridges, other than toll-bridges and toll-causeways. These latter were not to be built by a levy of a tax, because they were established under a different section of the same statute, and the "owner" built them, and gave bond to keep them in repair for travel and the transportation of the property of the passengers over them. This distinction is

clearly indicated in the section of the act already quoted above, by the words "when no one applies, as hereinafter prescribed, to establish the same." But under the authority to allow or license the establishment of toll-bridges and toll-causeways, the power was also given to take a guaranty by bond or otherwise, that the same shall continue safe for the passage of travelers and other persons for a stipulated time. The portion of the act conferring this authority is in these words: "When, in the opinion of the commissioners court, it is expedient to grant a license to any applicant to *establish* a ferry, toll-bridge, or causeway, they may do so, and shall at the same time prescribe the rate of toll or ferriage, and also require the applicant to enter into bond, with good security, in a sum not exceeding fifteen hundred dollars, payable to the judge of the county court of the proper county, and his successors in office, and conditioned, (in case of a ferry,) that the applicant will constantly provide and keep a good and sufficient boat or boats, and ferryman or hands, and keep the banks on each side of the water course in good repair; but in case of a toll-bridge or causeway, that it shall be well built according to the grade of the road it is on, and kept in good repair so that it may be passed at all times with safety and convenience; which bond they may, if they deem it necessary for better security, require the applicant to renew at any time on giving him ten days notice; and if he fail to do so, revoke his license. And should any person at any time sustain damages in consequence of the *owner* not having complied with the conditions of his bond, the person damaged may bring an action of debt or covenant on said bond in the name of the judge of the county court and recover damages to the extent of the injury sustained, to be applied to the use of the person injured, and such bond shall not become void by reason of the first or any subsequent recovery."—Clay's Digest, page 513, § 26. These two sections of the statute above referred to, so far as I have been able to ascertain from my own investigations, with the aid of the eminent counsel engaged on both sides of this cause, include all

the law upon the subject of bridges and causeways author-
ized to be built by contract with the commissioners court
at the time the bridge in this case was erected, and up to
the promulgation of the Code of Alabama. This law evi-
dently divides bridges and causeways authorized to be es-
tablished by the commissioners court into two classes. The
one class consisting of toll-bridges and toll-causeways, and
the other class consisting of free bridges and free cause-
ways. In the former class of cases, the commissioners
court were authorized and required to take guaranties, by
bond°of the "owner" or builder of the bridge or causeway,
to keep the same in proper repair for safe travel over the
bridge or causeway so built. In the other class of cases,
a tax was authorized to be levied by the commissioners
court to pay the cost of the erection of such free bridge
or free causeway, in certain cases, but no authority is given
to take any bond of the builder to keep any such free
bridge or free causeway in proper repair for travel after
the same may have been finished. As soon as such free
bridge or free causeway was finished and received by the
commissioners court and opened for travel over them, they
became a part of the public highways of the State, which
passed at once under the care and supervision of the over-
seer of the public roads of the counties in which they
might lie.—Rev. Code, § 1341; Clay's Digest, p. 512, § 21.
The guaranty mentioned in the complaint is not alleged to
be a part of the contract with the commissioners court to
build the bridge.—Clay's Dig. p. 511, § 19. And the evi-
dence tends strongly to show that it was taken after the
bridge was built and paid for. The commissioners court
had not at that time authority to take such a bond. The
act was *ultra vires*. It had no effect. *Pearce v. M. & I.
R. R. Co. et al.*, 21 How. 441, and cases there cited. Be-
sides, the bond was not such a bond as is indicated for a
toll-bridge, either in the amount of its penalty or its con-
dition. It was a nugatory act, and void.—21 How. 441,
*supra*. It had no effect whatever. And the enactment
subsequently passed, which is found in the Revised

Code, giving a remedy against the county for dam-
ages resulting from an unsafe bridge or causeway which
had been erected by contract with the commissioners court,
with a guaranty, by bond or otherwise, that such bridge or
causeway shall continue safe for the passage of travelers
and other persons for a stipulated time, was intended to
apply to toll-bridges and toll-causeways; because the guar-
anty by bond there referred to is a valid guaranty by valid
bond, and not a bond taken without authority; but such
an one as will support an action in favor of the party in-
jured against the makers of the bond for damages to per-
son or property before the expiration of the period of lim-
itation, during which the bridge or causeway should remain
safe for travel.—Revised Code, § 1396. This is also very
clearly the legislative construction of the section of the
Revised Code last above referred to; as is shown in the
amendment of said section by the act of February 18th,
1870, in which free bridges are put upon the same footing
with toll-bridges and toll-causeways. This amendment
would not have been made unless there had been a defi-
ciency in the original act.—Pamph. Acts 1869–70, p. 148,
Act No. 141. Moreover, if the period for the limitation,
beyond which the liability of the obligors in the bond for
the enforcement of the guaranty would have ceased, had
not expired, and the action was brought upon the bond
by the obligors, and not against the county, then it would
be necessary to show from the statute that the taking of
the bond itself was such a transaction as the commission-
ers court had authority to accomplish. Without such au-
thority, the bond would be a nullity.—21 How. 441, *supra*.
At the date of the bond in this case, the authority of the
commissioners court depended solely upon the statute of
1839. In this act nothing is said of power to take a bond
for enforcement of a guaranty as to the continued safety
of the bridge for a stipulated length of time, when the
bridge was not a toll-bridge.—Clay's Dig. p. 513, §§ 25, 26;
also, Rev. Code, §§ 1383, 1385, 1390. Even the authority
of the court of county commissioners under the Code is

not a general jurisdiction, but it is required "to be exercised in conformity with the provisions" of the Code.— Rev. Code, § 831. This puts the power wholly upon the statute law. And there is no provision of the Code, that I have been able to find, which gives authority to take such a bond as that mentioned in this case.—Rev. Code, §§ 1310, 1341, 1397. In such an action against the obligors, this court would be compelled to declare this bond void; that is, a nullity. This is clearly not such a bond as that intended in the Revised Code.—Rev. Code, § 1396. And the complaint is deficient in failing to allege that the commissioners court had authority to take the bond relied on, or that the bridge mentioned in the pleadings was a toll-bridge. *Barbour County v. Horn,* (in MSS.) The demurrer was, therefore, erroneously overruled. It should have been sustained, with leave to the plaintiff in the court below to amend his complaint as he might be advised and the facts of his case would justify.—Rev. Code, § 2657. I think that it scarcely admits of doubt, that the officers of the county, who are its corporate agents, have no power to subject the county, by their acts or their failure to act, to a suit for damages, unless the power is expressly or impliedly given by statute.—*Covington County v. Kinney,* 45 Ala. Rep. 176; *Fowle v. Common Council of Alexandria,* 3 Pet. 368. Nor could they transfer to the builder of a public or free bridge the duty of keeping it in repair and safe for travel, which duty belonged to the overseer of the public road.—Rev. Code, § 1341; Clay's Dig. p. 512, § 27. The charge of the court which was given, without the request of either party, on the trial below, was also based upon a misapprehension of the law, as it existed in 1852, in reference to the powers of the commissioners court to contract for the building of free bridges. It is opposed to the construction above given, and is erroneous. For these errors the judgment must be reversed. And this opinion might here conclude, if it were known that the plaintiff in the court below would refuse to make any further amendment to his complaint. But as this can not be known to this court, nor what case may be

made on an amended complaint, there are some other questions raised by the charges given and refused on the trial below, that may come up on a new trial, and they should be settled on this appeal. The one is, as to the date from which the "stipulated time" for the continuance of the guaranty should begin, and when it should end. The allegations of the complaint put its beginning at the "completion of the bridge." The bond makes the period of time thus stipulated six years, but without indicating the time of its commencement or its end. The bond does not show when the bridge was completed. It could not, then, be inferred from the bond itself when "the stipulated time" expired, so that, as a matter of law, it could be declared by the court. It must, then, be left to the jury, upon all the evidence delivered to them on the trial. This was the result of our investigation when this cause was here at the January term, 1871. The bond may be referred to the order of the court directing it to be taken. This order shows that "the commissioners" appointed to let out the building of the bridge were empowered "to *contract for the erection of a new bridge* over Lick creek, at the Beauchamps Camp Ground, requiring the undertaker to enter into bond with good security to keep the same in good passable order for six years *from the day of its completion.*" The day of the completion of the bridge was not a fact fixed by the bond. It was, therefore, proper to leave its ascertainment to the jury, as any other fact not admitted on the trial. The action of the court below on this point, in this case, on the trial below, was correct.

The other question above referred to involves the consideration of the elements which enter into an estimate of the damages in such a case as this. Damages, it is said, are intended as a pecuniary compensation to the party wronged for the hurt inflicted; to be great or small, in proportion to the injury itself. And where there is no malice connected with the wrong complained of, or such gross negligence, or oppression, or fraud as amounts to malice, the compensation or amount of damages should be con-

fined to the actual injury and its immediate effects upon the person of the plaintiff, when the action is for harm to the person, which seems to be the case here.—Sedgw, Dam. pp. 28, 29, 35, 36, *et seq.;* 2 Black. Com. 438; Coke, Litt. 257*a; Dexter v. Spear,* 4 Mason, 115; *Rockwood v. Allen, Ex'r,* 7 Mass. 254; *Bussy v. Donaldson,* 4 Dall. Penn. R. 206; *Donnell v. Jones,* 13 Ala. 490, 508. How this compensation shall be estimated by the jury, must depend upon the facts of each particular case. In such a matter, the jury can not be allowed unlimited and uncontrolled discretion.—Sedgw. Dam. pp. 30, 409, App. No. 1; 2 Greenl. Ev. §§ 253, 254; *Walker v. Smith,* Wash. C. C. R. 152; Sherm. & Redf. on Negl. p. 674, §§ 600, 601; also, *Bell v. Cunningham,* 3 Pet. 69, 86. But the authorities which define the practice under the admitted rule for the measure of damages, in all cases that may arise, seem not wholly free from confusion and uncertainty. In such a case as this, there can be no vindictive damages; and as there is no continuing trespass, but one action can be brought.—*Conard v. Pacific Ins. Co.,* 6 Pet. pp. 262, 282; *Tracy v. Swartwout,* 10 Pet. 80, 85; *Fetter v. Beal,* 1 Lord Raym. 339. Yet it is evident that the direct consequences of the injury may extend to the future as well as to the past. And it is for the disabling effects of the injury, whether past or prospective, that the plaintiff is entitled to compensation.— 3 Bouv. Bac. Abr. p. 57, and cases *supra.* Then, the jury may consider the expenses of the cure, and if the injury is irremediable, and will necessarily require future treatment and nursing, the probable costs of this, also, may be added; so, likewise, the loss of time up to the verdict, and the probable loss of time in the future, and the pain inflicted upon the body.—2 Greenl. Ev. § 267; *Fetter v. Beal, supra.* These are *things of value,* capable of pecuniary admeasurement, and which the plaintiff *loses* by the injury, or they are *burdens imposed* upon him by the conduct of the plaintiff, against the *effects* of which he is entitled to indemnity, so far as a pecuniary compensation can afford it. But the wealth of the defendant, or poverty of the plaintiff, has

Barbour County v. Horn.

nothing to do with their ascertainment. It was, therefore, improper to admit evidence of the wealth of the defendant in the court below to go to the jury, or to refuse to instruct the jury, when properly requested, that the defendant's wealth could not be taken into consideration in making up their verdict.—2 Greenl. Ev. § 268; *Wilcox v. Plummer*, 4 Pet. 172, 182. It may be also proper to remark, that in cases where there is a total loss of the services by the death of the person injured, the legislature has fixed a proper rule for the highest assessment of the damages; that is, the sum of one hundred dollars, annually, for thirty years, which is about the estimated period of one life, upon a general average.—Rev. Code, § 2298. Although a jury would not be bound by this rule, except in case of the death of the person injured, yet so far as loss of time is involved it might furnish a basis of a correct result; one, at least, fixed by positive law, in a similar case, where the loss of time is permanent.

It is urged by the learned counsel for the appellee, that if the judgment of the court below is reversed, then the cause should not be remanded, but dismissed. I do not think so. The plaintiff has the right to amend his complaint on sustaining the demurrer. In this, he can put any thing into his amended complaint which shows that he has been wronged by the defendant, and that the wrong so alleged is the subject of an action at law. This court has no authority to presume what this will be. It can only act upon the case brought here on appeal.

The judgment of the court below is reversed, and the cause is remanded for a new trial.