STUART, Justice.
Tommy Hand sued the Prattville law firm of Howell, Sarto & Howell (“the Howell firm”) and William P. Roberts II, an attorney formerly employed by the Howell firm, asserting a claim under the Alabama Legal Services Liability Act, § 6-5-570 et seq., Ala.Code 1975 (“the ALSLA”), based on them alleged negligent representation of him in an action seeking damages for personal injuries he suffered as a result of an automobile accident. The trial court entered a summary judgment in favor of the Howell firm and Roberts; Hand now appeals. We affirm.
I.
On September 15, 2004, Hand was injured in an automobile accident on interstate highway 1-65 in Montgomery when the truck he was driving was struck in the rear by another vehicle being driven by Julie Bennett. At the time of the accident, Hand was driving a truck for his employer, Hodges Bonded Warehouse, Inc., and Bennett was on-duty and working within the line and scope of her employment with the Montgomery Advertiser. Hand suffered a back injury in the accident and subsequently retained the Howell firm to pursue a personal-injury claim against Bennett stemming from the accident.
Roberts, at the time an associate attorney at the Howell firm, was responsible for doing the initial work on Hand’s personal-injury claim. He was supervised in that work by George Howell, a partner in the Howell firm. On September 11, 2006, Roberts filed a complaint in the Montgomery Circuit Court on behalf of Hand asserting a negligence and/or wantonness claim against Bennett. That complaint did not name the Montgomery Advertiser or its corporate parent, Gannett, Inc., as defendants, notwithstanding the fact that Bennett was on-duty and working for the Montgomery Advertiser at the time of the accident. In a deposition, Roberts would later state that George Howell told him it was unnecessary to add them as parties.
The Howell firm subsequently retained an accountant to calculate the present total value of Hand’s economic loss as a result of the accident; based on the severity of his back injury, that figure was calculated to be $872,500. Settlement negotiations ensued, and Bennett’s personal insurance company ultimately offered up $25,000, the limit of her policy. In approximately June 2007, Roberts learned that an additional $5,000,000 in coverage was available to Bennett under a policy Travelers Insurance (“Travelers”) had issued to Gannett, Inc., and, in February 2008, Roberts offered to settle the case for $1,000,000; that offer was rejected.
In August 2008 Roberts left the Howell firm, and in October 2008 the trial court granted his request to withdraw from Hand’s case. Although George Howell remained as Hand’s attorney of record, his health was poor and he was unable to adequately handle Hand’s case; accordingly, Harold Howell, who appears to have been the only other attorney at the Howell *601 firm at this time, retained Betty Love of Love, Love, & Love in Talladega to work on the case. On the cover sheet of the materials Harold Howell faxed to Love relating to the case, Harold Howell wrote: “I am faxing you the 2 complaints on Tommy Hand. George seems to think this is sufficient. My thoughts are we should have alleged she was an employee of the Montgomery Advertiser acting in the line and scope of her employment.”
In May 2009 Hand’s case went to mediation. Hand was represented by Harold Howell and Love at the mediation and made an initial offer to settle his claim against Bennett for $1,750,000. It appears to be undisputed that all the parties understood that Travelers, which had retained counsel for Bennett, would be funding the vast majority of any settlement; its initial counteroffer was $40,000. After some negotiation that offer was increased to $125,000; however, Hand subsequently refused to accept less than $1,250,000 and walked out of the mediation after Harold Howell and Love pressured him to make a lower counteroffer. In the following days, Harold Howell visited Hand at his residence and Hand’s wife at her workplace in an attempt to get Hand to reengage in settlement talks; however, his efforts were unsuccessful, and, on May 16, 2009, Hand notified the Howell firm via letter that he was terminating their attorney-client relationship based on “continuing pressure on my wife and me to take actions that I do not feel would be in my best interest.” On July 10, 2009, Hand obtained his legal file from the Howell firm.
On July 29, 2009, Hand met with Montgomery attorneys Frank Hawthorne and Randy Myers of the law firm Hawthorne & Myers to discuss his action against Bennett. They informed Hand at that time that the value of his case was diminished because the Montgomery Advertiser had not been named as a defendant and the statute of limitations on his claim barred Hand from adding a new defendant at this late date. They subsequently prepared affidavits in which they swore that the settlement value of a case against the Montgomery Advertiser would have been between $1,000,000 and $1,200,000. Hawthorne and Myers nevertheless agreed to represent Hand, and, following another round of mediation in November 2009, Hand agreed to settle his case for $625,000. Of that sum, $25,000 was paid by Bennett’s personal auto-insurance carrier and $600,000 was paid by Travelers pursuant to the insurance policy held by Gannett.
On January 13, 2010, Hand filed the instant action in the Montgomery Circuit Court alleging that Roberts and the Howell firm had committed legal malpractice by failing to name the Montgomery Advertiser as a defendant in his action against Bennett. The case was subsequently transferred to the Autauga Circuit Court, and, in separate motions, Roberts and the Howell firm moved for a summary judgment on Hand’s claims against them, arguing (1) that Hand’s claims were barred by the statute of limitations applicable to claims brought under the ALSLA; (2) that Hand’s claim for damages was too speculative; and (3) that Hand had released any claims against them in the release he had executed in accordance with his settlement in the action against Bennett.
On May 14, 2012, the trial court conducted a hearing on the pending summary-judgment motions, and, on May 21, 2012, the trial court granted Roberts’s and the Howell firm’s motions and entered a summary judgment in their favor without specifying the basis for that ruling. Hand’s subsequent motion to alter, amend, or vacate the judgment was denied by operation *602 of law pursuant to Rule 59.1, Ala. R. Civ. P., and Hand now appeals.
II.
Hand argues that the trial court erred in entering a summary judgment in favor of Roberts and the Howell firm. We review this argument pursuant to the following standard:
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ada. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12.”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004).
III.
The gravamen of Hand’s action is that Roberts and the Howell firm committed legal malpractice when they failed to name the Montgomery Advertiser — which Hand labels “the critical deep-pocket defendant” — as a party in Hand’s action against Bennett. Hand argues that the failure to name the Montgomery Advertiser as a defendant devalued his case to the extent that he had to settle for approximately half of what the case was worth and for an amount significantly less than his actual economic damage, not to mention his pain and suffering. Hand supports his claim that Roberts’s and the Howell firm’s actions constituted legal malpractice with the affidavit testimony of his subsequent attorneys, Hawthorne and Myers, indicating that his claim would have been worth up to $1,200,000 had the Montgomery Advertiser been named as a defendant, as well as Harold Howell’s note to Love indicating that “we should have alleged [Bennett] was an employee of the Montgomery Advertiser acting in the line and scope of her employment.”
However, even though the Montgomery Advertiser was not a named defendant in Hand’s action against Bennett, it was insured under a policy Travelers had issued the Montgomery Advertiser’s corporate parent Gannett, and Bennett was an additional insured under that same policy. Bennett invoked that coverage during the course of Hand’s action against her, and Travelers provided her with counsel and funded the vast majority of the eventual settlement. There is no evidence indicating that any additional insurance coverage would have been available had the Montgomery Advertiser been named as a defendant. Thus, Hand’s claim against Roberts and the Howell firm is essentially dependent on the assertion that a jury would have punished a “deep-pocket defendant” like the Montgomery Advertiser more than an individual like Bennett, and the concomitant assertion that Hand, therefore, would have been able to negotiate a higher settlement if the Montgomery Advertiser was a party based on the likelihood of a higher verdict being returned against the Montgomery Advertiser.
*603 However, even if, as Hand alleges, “every trial lawyer in the country” would agree with that assertion, his argument ultimately fails because we must presume that juries will follow the law, Johnson v. State, 612 So.2d 1288, 1299 (Ala.Crim.App.1992), and it has long been the law in this State that a jury must calculate damages based on the evidence of injury, not the identity of the defendant and his or her presumed wealth. For example, in Barbour County v. Horn, 48 Ala. 566 (1872), this Court reversed a judgment based on a verdict entered in favor of a plaintiff who was injured when he fell off an insecure bridge based on the improper admission of evidence regarding the defendant’s wealth and the trial court’s refusal to give the following requested jury charge: “Neither the fact that Barbour county, with its wealth, is defendant, nor the fact of the poverty or family distress of plaintiff ... can be taken into the account by the jury, in estimating the amount of damages or compensation which the county ought to pay plaintiff for said injuries.” 48 Ala. at 569-70. In doing so, the Court explained:
“Damages, it is said, are intended as a pecuniary compensation to the party wronged for the hurt inflicted; to be great or small, in proportion to the injury itself.... And it is for the disabling effects of the injury, whether past or prospective, that the plaintiff is entitled to compensation.... Then, the jury may consider the expenses of the cure, and if the injury is irremediable, and will necessarily require future treatment and nursing, the probable costs of this, also, may be added; so, likewise, the loss of time up to the verdict, and the probable loss of time in the future, and the pain inflicted upon the body.... These are things of value, capable of pecuniary ad-measurement, and which the plaintiff loses by the injury, or they are burdens imposed upon him by the conduct of the [defendant], against the effects of which he is entitled to indemnity, so far as a pecuniary compensation can afford it. But the wealth of the defendant, or poverty of the plaintiff, has nothing to do with their ascertainment. It was, therefore, improper to admit evidence of the wealth of the defendant in the court below to go to the jury, or to refuse to instruct the jury, when properly requested, that the defendant’s wealth could not be taken into consideration in making up their verdict.”
48 Ala. at 577-78 (emphasis omitted). See also Ex parte Hsu, 707 So.2d 223, 225 (Ala.1997) (“Accordingly, we turn to longstanding Alabama law on the issue of admissibility of evidence of a defendant’s wealth. Under that law, ‘evidence of a defendant’s wealth is highly prejudicial and, therefore, inadmissible [during trial].’ ” (quoting Southern Life & Health Ins. Co. v. Whitman, 358 So.2d 1025, 1026 (Ala.1978))).
Moreover, we have also made it clear that corporations are entitled to the same fair trial an individual would receive. In Chrysler Corp. v. Hassell, 291 Ala. 267, 272-73, 280 So.2d 102, 106 (1973), we explained this principle as follows:
“During closing argument, counsel for appellee stated to the jury:
“ ‘This is what this lawsuit is about. Let me tell you something about this corporation, lady and gentlemen. They keep talking about Mr. Preuitt, Mr. Preuitt, Mr. Preuitt. Jim Preuitt, as an individual, is not being sued. We have got two corporations here in this case. Jim Preuitt Chrysler Corporation and the Chrysler Corporation in Detroit. Think just a minute about what a corporation is, if you will.
*604 “ “You are people, I am people, Mr. Hassell [the plaintiff] is people. You have got blood running through your veins and you have got a heart beating. If you stick your finger, you bleed. One of these days, it may be tomorrow or it may be years from now, but you are every one going to die. I’m going to die and Mr. Hassell is going to die.’
“Here, an objection was overruled and exception noted:
“‘[Attorney for appellee]: And lady and gentlemen, when you die and when I die, we are going to face the same Maker. We are going to answer for what we did on this earth. I’m going to answer for what I did. Let me tell you something, lady and gentlemen. A corporation has no heart, it has got no soul. It has got no fear of Hell and Damnation in the hereafter.
“ ‘[Attorney for Chrysler Corp.]: Your Honor, we object to that, that is highly prejudicial, it is intended for the purpose of making this jury believe that the standard of justice is different for corporations and a person.
“‘[The court]: It is sustained. The court feels that is far afield.’
“This argument was improper, highly prejudicial and was not relevant to any issues in the case. A corporation is entitled to fair and equal treatment if it is a party to litigation. In Commercial Fire Ins. Co. v. Allen, 80 Ala. 571, 1 So. 202 [ (1887) ], this court, per Stone, C.J., held that a reference to the defendant as ‘this soulless corporation’ in concluding argument of counsel was ‘objectionable, and the court erred in not arresting that line of argument, when thereto requested.’ ”
See also Boone v. State, 170 Ala. 57, 62, 54 So. 109, 110 (1911) (“The fourteenth amendment provides that no state shall ‘deny to any person within its jurisdiction the equal protection of the laws.’ That corporations are persons within the meaning of this amendment is no longer open to discussion.”). Thus, it would be improper for a jury to hold the Montgomery Advertiser to a different standard of justice than the standard to which it held Bennett merely because the Montgomery Advertiser is a corporation, and it would likewise be improper for us to assume that a jury would exhibit such prejudice. The amount of any settlement in litigation is presumably based largely on the expected amount of the verdict that might be returned if a claim were to proceed to trial, and, were we to accept Hand’s argument that the Montgomery Advertiser’s inclusion as a defendant in this case would have resulted in a higher settlement, we would effectively be making that assumption of prejudice. We decline to do so.
Although the parties have not identified Alabama caselaw directly on point, the Superior Court of Pennsylvania considered a similar case in Schenkel v. Monheit, 266 Pa.Super. 396, 405 A.2d 493 (1979). The Schenkel court described the facts before it as follows:
“Briefly stated, these are the facts upon which the instant case is based. On January 9, 1969, appellant was injured in an automobile accident when his vehicle was struck from behind by a car driven by one Charles Salem. Appellant thereafter retained appellee as his attorney to prosecute appellant’s civil action against Salem. When appellee filed this action, he did not join Salem’s employer, Wintz Brothers Construction Company, as defendants. Appellant claims that at the time of the accident, Salem was ‘on the job’ and was within the scope of his employment for Wintz Brothers and that Wintz Brothers should have been *605 joined as defendants. Appellant’s dissatisfaction with appellee’s handling of the personal injury action led appellant to dismiss appellee before trial and retain other counsel to complete the case.”
266 Pa.Super. at 397-98, 405 A.2d at 493. The appellant was awarded $9,500 by a jury in his action against Salem. He thereafter filed a legal-malpractice action against the appellee, alleging that the jury would have awarded him a larger verdict in his personal-injury action if the corporate employer had been joined as a defendant. The Pennsylvania court rejected this argument, stating:
“In appellant’s case, the failure to join the corporate employer should not have affected appellant’s damages. The tort was the same in this case, whether or not the corporate employer was a party to the action. The actual tortfeasor, Salem, was made a defendant; the corporate employer would only arguably be liable under agency principles, not as an independent tortfeasor. Joinder of the corporate employer would simply have increased the number of parties against whom appellant could enforce any judgment he received.”
266 Pa.Super. at 400, 405 A.2d at 494. This rationale applies in the instant case as well. The “tort was the same” whether or not the Montgomery Advertiser was a party to the action, and the settlement Hand agreed to was in fact paid by the Montgomery Advertiser’s insurer; thus, there is no evidence indicating that Hand was prejudiced by the failure to name the Montgomery Advertiser as a defendant. Notably, this is not a case in which the plaintiff was unable to obtain satisfaction of a judgment or to obtain a meaningful settlement based on the judgment-proof status of the defendant; it appears to be undisputed that Bennett was covered by the $5,000,000 Travelers policy held by Gannett and that most of the funds for Hand’s settlement were paid pursuant to that policy. Accordingly, it is mere speculation to assume that either the settlement or any jury verdict would have been higher if the Montgomery Advertiser were a named defendant in Hand’s action against Bennett. This Court has previously stated that it will not speculate as to a jury’s rationale for reaching a verdict; for similar reasons, we will not speculate as to what verdict a jury might have reached in a certain case if that case had not been settled and if the roster of defendants had been augmented.[1] See, e.g., Clayton v. LLB Timber Co., 70 So.3d 283, 288 (Ala.2011) (“We decline to speculate that the jury reached its verdict solely on the basis of evidence indicating that [the appellant] was malingering.”).
IV.
The trial court entered a summary judgment in favor of Roberts and the Howell firm in Hand’s action alleging that they had committed legal malpractice while representing him in his action against Bennett. Because there is no evidence indicating, but only speculation, that Hand would have been able to settle his injury claim for a higher amount if Roberts and the Howell firm had also named the Montgomery Advertiser as a defendant, that judgment is hereby affirmed. All other arguments raised by the parties on appeal are accordingly pretermitted.
AFFIRMED.
*606 MOORE, C.J., and BOLIN and BRYAN, JJ., concur.
MURDOCK, J., concurs in the result.
PARKER, SHAW, and MAIN, JJ., dissent.

. Moreover, although Hand argues that he ultimately received less in his settlement ($625,000) than he suffered in actual damage ($872,500) and that this was a result of counsel’s failure to name the Montgomery Advertiser as a defendant, it bears emphasis that it was ultimately Hand's decision to settle his case and not present evidence of his damage to a jury.